UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                                      Case No. 15-10877 (SMB)

315 W 35TH ASSOCIATES LLC,                          Chapter 11

        Debtor.
------------------------------------------------------------------X

**SECURED CREDITOR MAZEL 315 WEST 35TH LLC'S MOTION PURSUANT TO 11 U.S.C. §§ 1112 AND 105(a) TO DISMISS THIS BANKRUPTCY CASE AND PROHIBIT DEBTOR FROM FILING ANOTHER BANKRUPTCY PETITION FOR 180 DAYS OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 362, FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW COMPLETION OF A FORECLOSURE SALE AND PURSUANT TO 11 U.S.C. § 543(d)(1), TO ALLOW THE RECEIVER TO RETAIN POSSESSION, CUSTODY AND CONTROL OF THE PROPERTY**

 

**MEISTER SEELIG & FEIN LLP**
Stephen B. Meister
Christopher J. Major
Kevin Fritz
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Mazel 315 West 35th LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

RELIEF REQUESTED ............................................................................................................... 4

BASIS FOR REQUESTED RELIEF ......................................................................................... 5

    The Petition was Filed in Bad Faith and is Futile .............................................................. 5

    The Automatic Stay Should Not Come into
    Effect if the Debtor Files Another Petition ....................................................................... 8

    In the Alternative, the Automatic Stay Should Be Lifted ................................................. 9

    The Receiver Should Retain Possession, Custody and Control of the Property ............. 10

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

## Cases Cited

*In re Casse*,
198 F.3d 327, 337 (2nd Cir. 1999)..................................................................................8

*In re Constable Plaza Assoc., L.P.*,
125 B.R. 98 (Bankr. S.D.N.Y. 1991)..............................................................................10

*In re C-TC 9th Avenue Partnership*,
113 F.3d 1304 (2nd Cir. 1997).........................................................................................5

*In re Hartford & York LLC*,
2014 WL 985449, at *8, Case No. 13-45563 (Bankr. E.D.N.Y. Mar. 13, 2014) ............9

*In re Inwood Heights Housing Development Fund Corp.*,
2011 WL 3793324, *11 (Bankr. S.D.N.Y. 2011) (Glen, J.)..............................................5

## Statutes Cited

11 U.S.C. § 105(a) ...........................................................................................................8

11 U.S.C. § 362(d) ...........................................................................................................9

11 U.S.C. § 543(a) .........................................................................................................10

11 U.S.C. § 543(b) .........................................................................................................10

11 U.S.C. § 543(d)(1) ....................................................................................................10

11 U.S.C. § 1112(b)(1) ....................................................................................................5

## Other Sources

*Collier on Bankruptcy*,
349.02 at p. 349-10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013)............8

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Phone: (212) 655-3500
Facsimile: (212) 655-3535
Kevin A. Fritz, Esq.
kaf@msf-law.com

*Attorneys for Mazel 315 West 35th LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| In re: | Case No. 15-10877 (SMB) |
| 315 W 35TH ASSOCIATES LLC, | Chapter 11 |
| Debtor. | |

------------------------------------------------------------------X

**SECURED CREDITOR MAZEL 315 WEST 35TH LLC'S MOTION PURSUANT TO 11 U.S.C. §§ 1112 AND 105(a) TO DISMISS THIS BANKRUPTCY CASE AND PROHIBIT DEBTOR FROM FILING ANOTHER BANKRUPTCY PETITION FOR 180 DAYS OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 362, FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW COMPLETION OF A FORECLOSURE SALE AND PURSUANT TO 11 U.S.C. § 543(d)(1), TO ALLOW THE RECEIVER TO RETAIN POSSESSION, CUSTODY AND CONTROL OF THE PROPERTY**

Mazel 315 West 35th LLC (the "Lender"), by and through its undersigned counsel, and pursuant to Sections 362, 543(d)(1), and 1112 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9014 of the Federal Rules of Bankruptcy Procedure, hereby moves this Court to dismiss this case and for relief from the automatic stay.

**INTRODUCTION**

1. The Debtor is a single purpose entity with a single asset – real property commonly known as 315 West 35th Street, New York, NY (the "Property"). *See* ECF Doc. No. 1, at 4-8. The Debtor accepted a series of loans made between 2005 and 2007, including an acquisition loan in the amount of $12,944,000, a building loan in the amount of $10,896,652, and a project

1

loan in the amount of $1,484,348 (the "Loans").[1] The Loans are secured by mortgage liens recorded against the Property. The Lender is the holder of the Loans. *See* ECF Doc. No. 1, at 9. After five years of acrimonious litigation in state court, a public foreclosure sale of the Property was scheduled for April 9, 2015. The night before, the Debtor filed the instant petition under Chapter 11 of the Bankruptcy Code in order to delay the sale. For the reasons set forth below and in the accompanying motion, the Court should dismiss this bankruptcy case and prohibit Debtor from re-filing for 180 days, or, in the alternative, grant Lender relief from the automatic stay so that the foreclosure sale can be completed and so that the state court-appointed receiver can retain possession, custody and control of the Property.

2.  For the last five years, the New York state court has dealt with the mortgage fraud that 315 W 35th Associates LLC (the "Debtor") perpetrated with respect to the Property. As detailed in the Declaration of Kevin Fritz, the Lender paid $10.75 million for three defaulted notes and mortgages, but due to a typographical error, the Lender's name (Mazel 315 West 35th LLC) was misspelled as "Mazal 315 W35th, LLC" on the loan assignment documents. In a fraudulent attempt to exploit the misspelling and steal ownership of the notes and mortgages, the Debtor's agent, Benjamin Herbst, formed a new entity in New York *with the same name as that reflected by the typographical error* – Mazal 315 W35th, LLC (the "Sham Entity"), counterfeited assignment documents, and then recorded them with the City Register. In a foreclosure proceeding pending in state court, the Debtor's agents then falsely claimed that the Sham Entity was the true and lawful owner of the notes and mortgages. The fraud was so patent that Justice Bernard Fried referred the matter to the District Attorney's Office and recused himself from the case. Finally, after five years of litigation, two foreclosure actions, four

---

[1] A more detailed summary of the history of the Loans is set forth in Lender's foreclosure complaint in New York state court, which is attached hereto as Exhibit K.

2

presiding justices, and numerous motions, a foreclosure sale of the Property was scheduled for April 9, 2015.

3.   On the literal eve of the sale, the Debtor filed its Petition for reorganization. However, the Debtor is a single-asset real estate entity with no unencumbered property, no income, no employees, and no operating business to reorganize. Indeed the Property is entirely vacant. Moreover, the Debtor has only a few unsecured creditors whose claims are tiny in relation to that of the Lender. The sole purpose of the Petition was to frustrate the Lender's exercise of its right to foreclose per the final judgment of foreclosure and sale handed down by the state court. In fact, *the Debtor admits that it has no plans to reorganize* and that it filed the Petition to buy time to sell the Property to an unspecified "potential purchaser" rather than at the state court-sanctioned foreclosure sale. (Dkt. No. 1, at Sorotzkin Cert. ¶ 11). Even though the foreclosure sale was publicized in the New York Law Journal for a month, the Debtor improperly refers to such sale as a "fire sale." (Id.). Putting aside that the Debtor failed to submit any proof of such $40 million "offer" with its Petition, even assuming that the "potential purchaser" exists, it is welcome to bid on the Property at the foreclosure sale.[2]

4.   For these reasons, the case should be dismissed so that the claims of the few creditors can be resolved in state court, as scheduled. In the alternative, the Lender requests that the automatic stay be lifted in order to permit the foreclosure sale to proceed.

## BACKGROUND

5.   The Court is respectfully referred to the Declaration of Kevin Fritz for a complete recitation of the factual background pertinent to this motion.

---

[2] It is noted that, throughout the foreclosure action, the Debtor repeatedly assured the state court that a private sale of the Property was imminent. Yet no such sale ever occurred.

3

6. In brief, on January 29, 2015, the New York State Supreme Court, New York County (the "State Court") entered an Amended Order & Judgment of Foreclosure and Sale in the matter of *Mazel 315 West 35th LLC v. 315 W 35th Assoc. LLC et al.* (Index No. 652627/2011) (the "Foreclosure Action"), which granted the Lender a judgment on its mortgage loans in the sum of $24,398,708.75 (plus interest and other expenses which increase the debt to approximately $28 million) and authorized the Lender to conduct a foreclosure sale of the Property to satisfy the amount due. (Fritz Decl., Exh. I). Thereafter, the Lender duly noticed and publicized the foreclosure sale, which was scheduled for April 9, 2015. (Fritz Decl., Exh. J, K).

7. On the eve of the foreclosure sale, the Debtor filed its Petition. (Dkt. No. 1). The Debtor's schedules list no asset other than the Property. (Dkt. No. 1, Schedules A, B). The only secured creditor is the Lender. (Dkt. No. 1, Schedule D). There are only a few unsecured creditors, the majority of which are the Debtor's lawyers. (Dkt. No. 1, Schedule F). The Debtor has received no income during the two years preceding the Petition. (Dkt. No. 1, Statement of Financial Affairs). In addition, the Debtor has no employees, (Dkt. No. 1, Schedule E) and the Property is entirely vacant and in desperate need of repairs. (Fritz Decl., Exh. L). The Certification of the Debtor's manager, Michael Sorotzkin, confirms that the Debtor has no plans to reorganize and simply filed the Petition to stay the foreclosure sale scheduled for the next day. (Dkt. No. 1, at Sorotzkin Cert. ¶¶, 5(c), 11).

### RELIEF REQUESTED

8. By this motion, Lender seeks an order pursuant to Sections 1112 and 105(a) of Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") for an order dismissing this bankruptcy case and prohibiting the Debtor from re-filing a bankruptcy petition for 180 days, or, in the alternative, an order pursuant to Section 362 of the Bankruptcy Code granting

4

Lender relief from the automatic stay to complete the pending foreclosure sale of the Property and an order pursuant to Section 543(d)(1) of the Bankruptcy Code allowing the Receiver to retain possession, custody and control of the Property.

## BASIS FOR REQUESTED RELEIF

### The Petition Was Filed in Bad Faith and is Futile

9. Section 1112(b) of the Bankruptcy Code states, in part, that "on request of a party in interest, and after notice and a hearing … the court shall convert … or dismiss a case under [chapter 11], whichever is in the best interest of the creditors … for cause." 11 U.S.C. § 1112(b)(1). "[T]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*…." *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2nd Cir. 1997)(quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)). "When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *Id.* "The standard in the Second Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Inwood Heights Housing Development Fund Corp.*, 2011 WL 3793324, *11 (Bankr. S.D.N.Y. 2011) (Glen, J.). "Once the movant has established the existence of both subjective bad faith and objective futility, a rebuttable presumption of bad faith arises and the burden shifts to the debtor to establish good and sufficient reasons why the relief should not be granted." *Id.*

5

10. In *C-TC 9th Ave. P'ship*, the Second Circuit held that a Chapter 11 case can be dismissed as bad faith filing. There, as here, the debtor's sole asset was a parcel of real estate and the debtor filed a Chapter 11 bankruptcy petition in response to a secured creditor's foreclosure action. The Second Circuit held that the bankruptcy court did not abuse its discretion in dismissing the case where "on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *Id.* at 1309 – 10. Furthermore, the Second Circuit identified eight factors that tend to indicate that a chapter 11 petition was filed in bad faith:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*Id.* at 1311.

11. Here, all eight factors are present. First, the Debtor's only asset is the Property. (Dkt. No. 1, Schedules A, B).

6

12.     Second, the Lender is the only secured creditor. (Dkt. No. 1, Schedule D). The Debtor only lists nine unsecured creditors, one of which is the NYC Environmental Control Board and four of which are the Debtor's various attorneys. (Dkt. No. 1, Schedules E, F). The debt owed to the Lender through April 8, 2015 is approximately $28 million, (Fritz Decl.), and not $24 million as set forth in the Petition. (Dkt. No. 1, Summary of Schedules). Even using the Debtor's calculation, the debt owed to the Lender constitutes 80% of the Debtor's liabilities.

13.     Third, the Debtor's Property is the subject of a mortgage foreclosure action that arises from the Debtor's defaults on certain notes and mortgages. (Dkt. No. 1, at Sorotzkin Cert. ¶¶, 4, 10, 11; Fritz Decl., Exh. A - K). In fact, the Debtor filed the Petition the day before the foreclosure sale was to occur. (Dkt. No. 1; Fritz Decl., Exh. J, K).

14.     Fourth, the Debtor's financial difficulties relate principally to its default on mortgages held by the Lender. (Fritz Decl., Exh. A - K). In fact, the Debtor admits that after acquiring the Property, it "encountered financial difficulties and could not proceed" with developing the Property. (Dkt. No. 1, at Sorotzkin Cert. ¶, 4). Again, the default is the subject of a foreclosure action brought by the Lender and such action was resolved by the entry of the Amended Order & Judgment of Foreclosure and Sale. (Fritz Decl., Exh. I). In essence, this is a foreclosure dispute between the Debtor and the Lender.

15.     Fifth, the timing of the Debtor's filing also evidences an intent to delay or frustrate the legitimate efforts of the Lender to enforce its rights. The Debtor filed for chapter 11 relief the night before the Property was scheduled to be sold at the state court-ordered foreclosure sale. (Dkt. No. 1; Fritz Decl., Exh. J, K).

16.     Sixth, the Debtor has no cash flow. (Dkt. No. 1, Statement of Financial Affairs). The Debtor "has no operating income for the next 30 days." (Dkt. No. 1, at Sorotzkin Cert. ¶, 6).

Because the Debtor's sole asset is the Property, which is vacant, there is no rental income for the Debtor.

17. Seventh, the Debtor is unable to meet current its expenses. The taxes and insurance related to the Property were paid by the Lender, not the Debtor. (Fritz Decl., Exh. I, p. 4). The Debtor cannot even pay its own legal fees, which according to the Petition "have been funded by certain of the equity interests of the Debtor." (Dkt. No. 1, at Sorotzkin Cert. ¶, 6). Amounts owed to the Environmental Control Board have not been paid. (Dkt. No. 1, Schedule E).

18. Eighth, the Debtor has no employees. (Dkt. No. 1, Schedule E). Nor does it have any tenants, as the Property is entirely vacant. (Fritz Decl., Exh. L).

19. Thus, each of the *C-TC 9th Ave. P'ship* factors supports the conclusion that the Petition was filed in bad faith. Furthermore, the Petition concedes that the Debtor is not even seeking to reorganize and has no viable plan to do so. Thus, the Debtor cannot possibly rebut the presumption that its filing was in bad faith. For these reasons, the case should be dismissed.

20. The Petition makes clear that the Debtor simply hopes to sell for more than the mortgage debt. But that can be accomplished by granting the relief herein requested because anyone can bid at the foreclosure sale.

**The Automatic Stay Should Not Come into Effect if the Debtor Files Another Petition**

21. In addition, Bankruptcy Code section 105(a) permits the Court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system. 11 U.S.C. § 105(a). Section 105(a) authorizes the Court to impose a temporary bar to refiling. *In re Casse*, 198 F.3d 327, 337 (2nd Cir. 1999). According to *Collier on Bankruptcy*, "[b]ankruptcy courts have, on occasion, enjoined the filing of a [subsequent] petition for a period

of time, usually six months, when it was clear that the debtor was trying to circumvent the attempts of creditors to modify the automatic stay in the original case. *Collier on Bankruptcy*, ¶ 349.02 at p. 349-10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

22. Here, as set forth above, the Debtor abused the Bankruptcy Code by filing this case in bad faith. The Debtor even admits that it filed the Petition to avoid the foreclosure sale. (Dkt. No. 1, at Sorotzkin Cert. ¶ 11). Hence, the Court should order that if the Debtor files a bankruptcy petition within 180 days following the dismissal of this case, the automatic stay shall not come into effect upon such filing unless, after notice and a hearing, the Court determines that the later case was filed in good faith. *See In re Hartford & York LLC*, 2014 WL 985449, at *8, Case No. 13-45563 (Bankr. E.D.N.Y. Mar. 13, 2014).

**In the Alternative, the Automatic Stay Should Be Lifted**

23. In the alternative, to the extent that the Court determines that dismissal is not warranted, the Lender in the alternative seeks relief from the automatic stay pursuant to Bankruptcy Code section 362(d) to permit it to complete the foreclose sale of the Property as ordered in the pending state court action.

24. Under Section 362(d)(1) of the Bankruptcy Code, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay … for cause, including the lack of adequate protection of an interest in property."

25. It is undisputable that the Debtor cannot protect the Lender's interests in the Property. The Debtor has no income, and has not paid insurance, property taxes or other administrative expenses related to the Property. (Dkt. No. 1, Statement of Financial Affairs; Fritz Decl., Exh. I, p. 4). There are no business operations for the Debtor to reorganize, the

9

Property is vacant, and the Debtor concedes that it has no intention of reorganizing. Thus, the automatic stay should be lifted.

**The Receiver Should Retain Possession, Custody and Control of the Property**

26. Also in the alternative to dismissal, the Lender seeks an order allowing the Receiver to retain possession, custody and control of the Property. Section 543(a) and (b) of the Bankruptcy Code mandates a "custodian" such as a state court-appointed receiver to turn over to the bankruptcy trustee or debtor-in-possession any property of the debtor that is in the possession, custody or control of the custodian. However, section 543(d)(1) permits the Bankruptcy Court to excuse a custodian's strict compliance with the turnover provisions of section 543(a) and (b) "if the interest of creditors would be better served by permitting the custodian to continue in possession of the property."

27. Court considering whether to exercise its discretion under section 543(d)(1) look at several factors: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; and (4) whether or not there are avoidance issues raised with respect to property retained by a receiver. *In re Constable Plaza Assoc., L.P.*, 125 B.R. 98, 103 – 04 (Bankr. S.D.N.Y. 1991). Here, the Petition concedes that the Debtor is not even seeking to reorganize and has no viable plan to do so. The Property is vacant, so the Debtor cannot use the Property to benefit the creditors. (Fritz Decl., Exh. L). In terms of mismanagement by the Debtor, the Debtor engaged in a massive fraudulent scheme to steal the Notes and Mortgages. (Fritz Decl., Exhs. B, D). Lastly, there are no avoidance issues.

## CONCLUSION

28. For the reasons set forth herein, the Lender respectfully requests that the Court enter an Order: (a) dismissing the case as a bad faith filing; (b) barring the Debtor from filing any bankruptcy petitions for 180 days following dismissal of the case; (c) in the alternative to dismissal, (i) granting the Lender relief from the automatic stay to permit the Lender to conclude the foreclose sale of the Property and (ii) allowing the receiver to retain possession, custody and control of the Property; and (d) granting the Lender such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 23, 2015

**MEISTER SEELIG & FEIN LLP**

/s/ Stephen B. Meister
_____
By: Stephen B. Meister
    Christopher J. Major
    Kevin Fritz
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
kaf@msf-law.com
*Attorneys for Mazel 315 West 35th LLC*

11