**Hearing Date & Time: October 7, 2015 at 2:00 p.m. EDT**
**Objection Deadline: September 30, 2015 at 5:00 p.m. EDT**

David B. Shemano, Esq.
**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel:  (212) 980-7400
Fax: (212) 980-7499

- and -

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax: (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 33 PECK SLIP ACQUISITION, LLC, | Case No. 15-12479 (JLG) |
| Debtor. | (Joint Administration Pending) |

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR ORDERS
PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006
APPROVING (I) SALE PROCEDURES AND NOTICE OF THE
AUCTION RELATING THERETO, (II) THE STALKING HORSE
PURCHASE AGREEMENT, (III) SALE OF CERTAIN REAL PROPERTY
TO MORNING VIEW HOTELS - NEW YORK SEAPORT, LLC OR A
PARTY MAKING A HIGHER AND BETTER OFFER, FREE AND CLEAR**

**OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES, AND (IV)
GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE,** that 33 Peck Slip Acquisition LLC(the "<u>Debtor</u>" or

"<u>Seller</u>"), filed the Debtors' Joint Plan Of Reorganization Date September 3, 2015 (the

"Plan") and a motion (the "<u>Sale Motion</u>") seeking (i) the entry of an order (the

"<u>Procedures Order</u>") pursuant to Sections 105(a), 363, and 365 of Title 11 of the United

States Code (the "<u>Bankruptcy Code</u>") and Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and pursuant to the amended

guidelines adopted by General Order M-383 (a) approving bidding procedures (the

"<u>Sale Procedures</u>") in connection with the sale (the "<u>Sale</u>") of the real property located

at 33 Peck Slip, New York, NY (the "<u>Property</u>") to Morning View Hotels - New York

Seaport, LLC ("<u>Purchaser</u>"), as more particularly described in the asset purchase

agreement (together with the related sale documents, the "<u>Purchase Agreement</u>"),

Annexed to the Sale Motion as Exhibit "A"; (b) approving the Purchase Agreement; (c)

scheduling an auction (the "<u>Auction</u>") (if a qualified competing bid, other than

Purchaser's, is timely received) and, at the election of the Debtors, a sale hearing (the

"<u>Sale Hearing</u>"); and (d) approving the form of notice of such Sale Procedures, the

Auction and the Sale Hearing; and (ii) if the Debtor requests a Sale Hearing (rather than

seeking approval of the Sale under the Plan), entry of an order (the "<u>Sale Order</u>") (a)

pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 6004 and

6006 of the Bankruptcy Rules authorizing and approving the Sale to Purchaser or to

another qualified bidder submitting a higher or better offer (the "<u>Successful Bidder</u>")

free and clear of all liens, claims, interests or encumbrances; and (b) granting related

relief.

**PLEASE TAKE FURTHER NOTICE,** that on October 7, 2015 at 2:00 p.m. EDT (the

"Bid Procedures Hearing"), the Debtor, by its attorneys, Robins Kaplan LLP, will move

before the Honorable James L. Garrity, United States Bankruptcy Judge, at the United

States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, for entry of an order approving the Sale Procedures

annexed to the Sale Motion as Exhibit "B."

**PLEASE TAKE FURTHER NOTICE,** that if the Debtor elects to schedule a

separate Sale Hearing, which may be scheduled at or after the Bid Procedures Hearing,

the Debtor, by its attorneys, Robins Kaplan LLP, will move before the Honorable James

L. Garrity, United States Bankruptcy Judge, at the United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, New York, New York 10004,

for entry of an order approving the Sale of the Property to Morning View Hotels - New

York Seaport, LLC, or such other Qualified Bidder who has submitted a higher and

better bid for the Property in accordance with the Sale Procedures.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief to be

sought at the Bid Procedures Hearing must: (a) be in writing; (b) be filed with the Clerk

of the Bankruptcy Court in accordance with the standing general order of the

Bankruptcy Court for the Southern District of New York entered on January 19, 2001,

establishing procedures for electronic filing, and be received in the chambers of the

Honorable James L. Garrity, United States Bankruptcy Judge, United States Bankruptcy

Court, One Bowling Green, New York, New York 10004; and (c) served upon (i) the

undersigned counsel for the Debtor; (ii) the Office of the United States Trustee,

Southern District of New York, 201 Varick Street, Room 1006, New York, N.Y. 10014

Attn: Greg Zipes; and (iii) Abraham Backenroth, Backenroth Frankel & Krinsky LLP,

800 Third Avenue – 11th Floor, New York, New York 10022 (counsel to Morning View

Hotels - New York Seaport, LLC), so as to be actually received no later than **September**

**30, 2015 at 5:00 p.m. EDT** (the "Objection Deadline").

     **PLEASE TAKE FURTHER NOTICE** that you need not appear at the Bid

Procedures Hearing if you do not object to the Sale Procedures.

     **PLEASE TAKE FURTHER NOTICE,** that the Bid Procedures Hearing or the Sale

Hearing, if one is requested and scheduled, may be adjourned from time to time

without further notice other than by announcement of the adjournment date in open

court.

Dated: New York, New York
      September 8, 2015

                        **ROBINS KAPLAN LLP**


                        By: /s/ David B. Shemano
                        David B. Shemano, Esq.
                        601 Lexington Avenue
                        Suite 3400
                        New York, NY 10022-4611
                        Tel:  (212) 980-7400
                        Fax:  (212) 980-7499

-and-

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax:  (310) 229-5800

*Proposed Counsel for Debtor and Debtor in
Possession*

**Hearing Date & Time: October 7, 2015 at 2:00 p.m. EDT**
**Objection Deadline: September 30, 2015 at 5:00 p.m. EDT**

David B. Shemano, Esq.
**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel:  (212) 980-7400
Fax: (212) 980-7499

- and -

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax: (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 33 Peck Slip LLC, | Case No. 15-12479 (JLG) |
| Debtor. | (Joint Administration Pending) |

**DEBTOR'S MOTION FOR ORDERS PURSUANT TO SECTIONS 105(a),
363, AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 6004 AND 6006 APPROVING (I) SALE PROCEDURES AND
NOTICE OF THE AUCTION RELATING THERETO, (II) THE
STALKING HORSE PURCHASE AGREEMENT, (III) SALE OF
CERTAIN REAL PROPERTY TO MORNING VIEW HOTELS - NEW
YORK SEAPORT, LLC OR A PARTY MAKING A HIGHER AND**

**BETTER OFFER, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS
OR ENCUMBRANCES, AND
(IV) GRANTING RELATED RELIEF**

TO:  THE HONORABLE JAMES L. GARRITY,
      UNITED STATES BANKRUPTCY JUDGE:

33 Peck Slip Acquisition LLC (the "Debtor" or "Seller"), hereby moves this Court

(the "Motion"): (i) for the entry of an order (the "Procedures Order") pursuant to

Sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy

Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and pursuant to the amended guidelines adopted by General

Order M-383 (a) approving bidding procedures (the "Sale Procedures") in connection

with the sale (the "Sale") of the real property located at 33 Peck Slip, New York, NY (the

"Property") to Morning View Hotels - New York Seaport, LLC (the "Purchaser"), as

more particularly described in the asset purchase agreement (together with the related

sale documents, the "Purchase Agreement"); (b) approving the Purchase Agreement; (c)

scheduling an auction (the "Auction") (if a qualified competing bid, other than

Purchaser's, is timely received) and, if requested by the Debtors, a sale hearing (the

"Sale Hearing"); and (c) approving the form of notice of the Sale Procedures, the

Auction, and any Sale; and (ii) if the Debtor requests a Sale Hearing, after completion of

the Sale Hearing, entry of an order (the "Sale Order") pursuant to Sections 105(a), 363,

and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Bankruptcy Rules (a)

authorizing and approving the Sale to Purchaser or to another qualified bidder

submitting a higher or better offer (the "Successful Bidder") free and clear of all liens,

claims, encumbrances and interests, and (b) granting related relief, including the

Debtor's right to recover the reasonable, necessary costs and expenses of preserving, or

disposing of the Property from the proceeds of the Sale, Pursuant to Section 506(c) of

the Bankruptcy Code. In support of the Motion, the Debtor has filed the Declaration of

Douglas Hercher concurrently herewith and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Together with the affiliated debtors in these jointly-administered Chapter 11

Cases,[1] the Debtor has filed the Debtors' Joint Plan of Reorganization Dated September

3, 2015 (the "Plan") that contemplates, among other things, the Sale. By this Motion, the

Debtor seeks to establish procedures for the Sale, including approval of Sale Procedures

and certain bid protections to the Purchaser as the stalking horse bidder, in order to

facilitate the Sale, which will occur pursuant to the Plan, or, at the Debtors' option, may

proceed pursuant to a separate Sale Hearing and the entry of the Sale Order.

2.      Accordingly, in addition to approval of the Sale Procedures, by this Motion,

if the Debtor elects at or after the Bid Procedures Hearing to schedule a Sale Hearing,

the Debtor also seeks approval of the Sale of the Property to the Purchaser or another

Successful Bidder submitting a higher or better offer for the Property. The Debtor

submits that all negotiations with the Purchaser were without collusion, in good faith,

from arms'-length, fair and reasonable, and the fruit of such negotiations will inure to

the benefit of the Debtor's bankruptcy estate.

---

[1] The following affiliated debtors have moved for joint administration of their estates and chapter 11 cases: 52 West 13th P, LLC (Case No. 15-12482), Gemini 37 West 24th Street MT, LLC (Case No. 15-12481); and 36 West 38th Street, LLC (Case No. 15-12480).

3.      The Debtor respectfully requests that this Court approve the relief requested in this Motion, thereby allowing the Debtor to proceed with a sale process that will inure to the benefit of the Debtor's estate and all of its constituents.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested herein are Sections 105(a), 363, 365, and 506(c) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006. The Debtor also relies upon the amended guidelines adopted pursuant to General Order M-383.

## GENERAL BACKGROUND

6.      On September 3, 2015 (the "Petition Date"), the Debtor commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its property as a Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      Additional factual background relating to the Debtor's businesses and the commencement of the chapter 11 case is set forth in detail in the *Declaration of Christopher La Mack Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York In Support of Debtors' Emergency and Other 'First-Day' Motions* (the

"**First Day Declaration**"), filed in this case at Docket No. 3 and fully incorporated

herein by reference.

**RELEVANT BACKGROUND RELATED TO SALE**

8.      This section will provide the Court with the necessary background relating

to the proposed sale of the Property:

**A.      The Purchaser**

9.      The Purchaser is a Delaware limited liability company or an assignee formed

for the sole purpose of the sale of the Property.

**B.      Summary of Purchase Agreement**

10.      The salient terms of the Purchase Agreement are as follows:[2]

Purchase Price: The purchase price for the Property is at least $37,300,000.

Assets to be Sold: The Seller is selling the Property "as is" and "where is",
without representations and warranties (other than as set forth in Section __
of the Purchase Agreement) along with all appurtenances; improvements;
any intangible and tangible personal property located at and used
exclusively in connection with the Property; and all leases, licenses and other
agreements related to the Property in effect at the time of the Sale closing.
The Property shall be sold free and clear of any liens, claims, interests or
encumbrances, with such liens, claims or encumbrances attaching to the
proceeds of the sale.

Costs and Expenses: All closing costs shall be allocated in accordance with
the custom in the county in which the Property is located with respect to the
purchase and sale of similar types of properties. Notwithstanding anything
contained herein to the contrary, except as otherwise specifically set forth
herein, each party shall be responsible for its own legal and accounting
expenses incurred in connection with the subject matter of the Purchase
Agreement.

---

[2] The Summary of the Purchase Agreement set forth in this Motion is for convenience only. To the extent
that the summary differs in any way with the Purchase Agreement, the actual terms of the Purchase
Agreement will control. A copy of the fully executed Purchase Agreement is annexed hereto as **Exhibit
"A."** Additionally, capitalized terms contained in this section that are not otherwise defined, shall have
the meanings ascribed to such term in the Purchase Agreement.

Expense Reimbursement/Break-Up Fee: In the event that: (1) the Bankruptcy Court approves a sale offer other than to the Purchaser or the Property is retained by the Seller, (i) the Earnest Money shall be returned to Purchaser; (ii) Purchaser shall be paid, from the proceeds of such sale or if retained by the Seller from the Seller, a break-up fee equal to Seven Hundred Fifty Thousand Dollars ($750,000); and (iii) neither the Seller nor Purchaser shall have any further rights or obligations to one another under this Agreement except for obligations that specifically survive the termination of this Agreement, including, without limitation, Purchaser's right to the Breakup Fee. Notwithstanding anything contained in the Agreement to the contrary, in the event the Bankruptcy Court approves the sale to a Successful Bidder and such Successful Bidder fails to close on the acquisition of the Property in accordance with the terms of such Bankruptcy Court order, upon receipt of 10 days written notice to Purchaser of such failure to close, if Purchaser is the next highest bidder, Purchaser shall be obligated to acquire the Property at the Purchase Price or at the amount of any higher bid submitted by Purchaser, but only in accordance with the timing provisions in the Purchase Agreement.

Topping Bid:  the auction sale procedures shall require an initial topping bid by any other bidder of at least $500,000 over and above the amount of the Breakup Fee and contract price.

11.    The Purchase Agreement requires the Debtor to promptly move this Court to confirm the Plan or, separately, for an order authorizing the sale of the Property pursuant to the Purchase Agreement.

12.    In connection with the Sale, there have been no discussions and Purchaser has no intention to enter into any agreements (other than the Purchase Agreement) with the Debtor or any of the Debtor's management or key employees concerning future employment.

## C.    Proposed Sale Procedures

13.    The Debtor desires to receive the greatest value for the Property for the benefit of the Debtor's estate and all of its creditors. Although the Debtor believes the terms of the Purchase Agreement are fair and reasonable and reflect the highest and

best value for the Property, it nevertheless will place the Purchase Agreement to the test

of the broader public marketplace in order to determine whether higher or better offers

are generated for the Property.

14.     Accordingly, the Sale Procedures (as summarized below) were developed

consistent with the Debtor's objective of promoting active bidding that will result in the

highest or best offer the marketplace can sustain for the Property while affording

appropriate protection to the Purchaser. Moreover, the Sale Procedures reflect the

Debtor's objective of conducting the Auction in a controlled, but fair and open fashion

that promotes interest in the Property by financially capable, motivated bidders who

are likely to close a transaction, while simultaneously discouraging non-serious offers

and offers from persons the Debtor does not believe are sufficiently capable or likely to

actually consummate a transaction.

15.     Prior to the Bankruptcy Case, the Debtor retained RobertDouglas (the "Real

Estate Advisor") to market the Property.  As part of the marketing efforts, subject to this

Court's approval, the Property will be for sale for approximately 30 days after entry of

the order approving the Sale Procedures. The Debtor submits that this timeframe is

sufficient based on feedback it has received from the Real Estate Advisors regarding the

current state of the real property market where the Property is situated.

16.      Throughout November 2014, the Real Estate Advisors prepared marketing

materials for the marketing and sale efforts of the three properties.

17.     The agreed marketing strategy, which is typical for institutional-quality

properties, consisted of the following steps:

a) Prepare a high quality offering document with market study, analysis of competitors, financial projections, discussion of value enhancement opportunities, location description, physical description, maps, graphics and photographs;

b) Prepare an investment summary (which would not include detailed financial information) to establish preliminary interest;

c) Distribute the Summary and a confidentiality agreement to the target investors;

d) Provide access to diligence and underwriting data;

e) Engage investors directly via email, telephone and in direct meetings to respond to questions and market the properties;

f) Accompany investors to on-site inspections;

g) Set bid date, analyze offers, share background on bidders and assist in identifying the top bidders and work with owner to complete the sale on the best possible terms (both price and the financial capability of the buyer being considered).

18.    On December 16, 2014, the Real Estate Advisors officially began marketing efforts for the Best Western Seaport Hotel, Jade Greenwich Village Hotel and Bryant Park Development Site. The hotels were marketed as a portfolio but investors were advised that offers for individual properties were welcome. Highlights of the overall marketing included:

a) an initial marketing email with the Summary and confidentiality letter to 4,832 prospective purchasers in 11 countries on December 16th;

b) a follow-up email to set the bid date on January 23, 2015 to 2,951 investors (narrowed down to reflect "declines" received previously);

c) 116 investment firms executed the confidentiality agreement;

d) 499 individuals were provided access to the underwriting material (reflecting the fact that multiple individuals from firms were accessing the diligence);

e) 39 formal tours of the three properties and many investors toured the properties independently;

f) The Real Estate Advisors received 17 qualified offers for the properties.

19.    The following information summarizes key provisions of the Sale Procedures, but are qualified in their entirety by reference to the actual Sale Procedures attached hereto as Exhibit "B":

Bidding Requirements. For any potential bidder who wishes to participate and submit a bid ("Acceptable Bid") with respect to the Property, it must satisfy the following criteria (the "Bidding Requirements") to be an "Acceptable Bidder." An Acceptable Bidder is a bidder who delivers to the Debtor a written and binding offer on or before the Bid Deadline (as defined below) that includes each of the following:

a. a bid for the Property in its entirety for a cash price equal to or greater than $38,550,000;

b. representations that the Acceptable Bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Property on terms and conditions no less favorable to the Debtor than the terms and conditions contained in the Purchase Agreement;

c.  a clean and duly executed purchase agreement (the "Modified Purchase Agreement") and a marked Modified Purchase Agreement reflecting all of the variations from the Purchase Agreement and any exhibits or attachments thereto;

d.  representations that the Acceptable Bidder's offer shall remain open and is irrevocable until the closing of the purchase of the Property if such Acceptable Bidder is ultimately the Successful Bidder (as defined below);

e.  that the Acceptable Bidder does not request or is not entitled to any transaction or break-up fee, expense reimbursement or similar type of payment;

f.  full disclosure and the identity of each entity that will be bidding for the Property or otherwise participating in connection with the bid made the Acceptable Bidder;

g.  a cash deposit or cashier's check in the amount of $3,855,000 (the <u>Good Faith Deposit</u>"), which Escrow Agent, Old Republic National Title Insurance Company, will hold in a segregated account containing only deposits received from Acceptable Bidders and will be subject to the terms set forth in paragraph 10 of these Sale Procedures;

h.  representations that the Acceptable Bidder is financially capable of consummating the transaction contemplated by the Modified Purchase Agreement;

i.  such financial and other information that will allow the Debtor to make a reasonable determination as to the Acceptable Bidder's financial and other capabilities to consummate the transaction contemplated by the Modified Purchase Agreement;

j.  that the Modified Purchase Agreement does not contain any due diligence contingencies of any kind;

k.  evidence that the Acceptable Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Property, which evidence is satisfactory to the Debtor in its reasonable discretion;

l.  evidence of authorization and approval from the Acceptable Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified Purchase Agreement (where applicable);

m.  admissible evidence in the form of affidavits or declarations establishing the Acceptable Bidder's good faith, within the meaning of Bankruptcy Code §§ 363(m) & (n); and

n.  other information reasonably requested by the Debtor in its effort to determine if the Acceptable Bidder is a Qualified Bidder (as defined below).

An Acceptable Bid submitted by the Bid Deadline by an Acceptable Bidder that meets each of the above requirements shall be considered by the Debtor, in consultation with the Real Estate Advisors, to determine that such Acceptable Bids are deemed a "Qualified Bid" submitted by a "Qualified Bidder". Notwithstanding anything in these Sale Procedures to the contrary, Purchaser (i) is deemed to have satisfied each of the Bidding Requirements set forth in these Sale Procedures and is not required to undertake any other Bidding Requirements should such be subsequently modified, (ii) the Purchase Agreement is a Qualified Bid, and (iii) Purchaser is a Qualified Bidder.

Bid Deadline. **All Acceptable Bids must be submitted by no later than November 5, 2015, at 4:00 p.m. (EDT) (the "Bid Deadline")** to be eligible to be considered a Qualified Bid. Prior to the Bid Deadline, Acceptable Bidders shall deliver written copies of their bids to counsel to the Debtor, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 Attn. Scott Gautier. The Debtor, with the assistance of counsel and the Real Estate Advisors, shall review any Acceptable Bid and shall make a determination regarding whether such Acceptable Bid is a Qualified Bid and shall notify Acceptable Bidders whether their Acceptable Bids have been determined to be Qualified Bids by no later than **November 9, 2015, at 9:00 a.m. (EDT)**. The Debtor, at the same time of notifying the Qualified Bidders, shall also notify Purchaser of any Qualified Bids. For the avoidance of doubt, should no other Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder.

Auction. In the event that the Debtor receives by the Bid Deadline one or more Qualified Bids (other than by Purchaser), the Debtor shall conduct an auction with respect to the Property (the "Auction"). The Auction shall take place on **November 10, 2015 at 12:00 p.m. (EDT)** (the "Auction Time") at the offices of Robins Kaplan LLP, 601 Lexington Avenue, 34th Floor, New York, New York 10018, or such other location that the Debtor, in consultation with the Real Estate Advisor, determines will enhance the prospects for higher or better bidding on the Property. To the extent the location of the Auction is changed, the Debtor shall notify all Qualified Bidders, Purchaser, and other invitees via email or facsimile (only to the extent the Debtor does not have an email address for a party) not later than one (1) business day before the Auction Time (or re-scheduled Auction Time, as applicable). If, however, no such other Qualified Bid

is received by the Bid Deadline, then the Auction will not be held, and Debtor shall so notify Purchaser no later than one (1) business day after the Bid Deadline. The Auction shall be governed by the following procedures:

o. Only representatives of the Debtor, the Purchaser, and the Qualified Bidders are eligible to participate at the Auction;

p. All bids shall be made and received in one room, on an open outcry basis, and all other Qualified Bidders will be entitled to be present for all bidding, and all material terms of each bid shall be fully disclosed to Purchaser and all other Qualified Bidders;

q. The Auction will be conducted so that the Purchaser and each Qualified Bidder will be informed of the previous bid;

r. Only the Purchaser and Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

s. Qualified Bidders may submit successive bids in increments of at least $250,000, unless otherwise modified at the Auction;

t. The Purchaser, if the Successful Bidder, will receive a credit equal to the amount of its expense reimbursement and break-up fee and does not waive its expense reimbursement or break-up fee by participating in the Auction and submitting subsequent bids (*i.e.*, bids other than the offer in the Purchase Agreement);

u. The Purchaser and each Qualified Bidder will be permitted a fair amount of time to respond to the previous bid at the Auction;

v. Bidding shall commence at the amount of the highest or best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline;

w. The Purchaser and other Qualified Bidders shall participate in person at the Auction (or through a method reasonably designated by Debtor), through a duly authorized representative with authority to bind the bidding entity;

x. The Purchaser and each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

y. The Auction shall continue in one or more rounds until there is only one Qualified Bid the Debtor determines, after review of such bid on the bases of its financial and contractual terms, to be the highest or best offer (the "Successful Bid") submitted at the Auction from among the Qualified Bidders and Purchaser. The Qualified Bidder submitting such Successful Bid shall become the

"Successful Bidder," and shall have such rights and responsibilities set forth in the Purchase Agreement or the Modified Purchase Agreement, as applicable;

z.  At the end of the Auction, the Debtor shall also announce the next highest or otherwise best offer after the Successful Bid(s) (the "Next Highest Bid," and the Qualified Bidder(s) that submitted such bid, the "Next Highest Bidder");

aa. The close of the Auction will be formally announced by the Debtor, and no bids made after such announcement will be eligible to be considered a Successful Bid and will not be considered by the Bankruptcy Court at the Sale Hearing (as defined below);

bb. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, these Sale Procedures, and the construction and enforcement of the Qualified Bidders' Modified Purchase Agreement(s), as applicable; and

cc. The Debtor will arrange for the actual bidding at the Auction to be transcribed by a court reporter.

dd. Acceptance of the Successful Bid. The Debtor shall have accepted a Qualified Bid as a Successful Bid only when (a) such bid is declared the Successful Bid at the Auction, (b) definitive documentation, other than by Purchaser, has been executed in respect thereof, and (c) the Bankruptcy Court has approved the Successful Bid by an entered/docketed Confirmation Order or Sale Order. For the avoidance of doubt, should no Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder.

ee. Sale Hearing. The Successful Bid will be subject to approval by the Bankruptcy Court as part of either a Plan and entry of the Confirmation Order or by separate hearing (the "Sale Hearing") seeking approval of the sale of the Property to the Successful Bidder and entry of the Sale Order. For the avoidance of doubt, should no other Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder. Please be advised that approval of the Sale shall be pursuant to a Plan, however, the Debtor reserves the right, at its sole election if there is an Auction, to seek approval of the Sale at the Sale Hearing, otherwise the Purchaser and the Debtor will determine the most expedient and reasonable method to obtain approval of the Sale. If scheduled, the Sale Hearing will be noticed at such time as counsel may be heard in the Bankruptcy Court. The Sale Hearing may be adjourned by consent of the parties or an order of the Court from time to time on notice to creditors and other parties in interest, or without further notice other than by

announcement of the adjournment in open court on the date scheduled for the
Sale Hearing or notice of the adjournment filed on the Court's Docket prior to the
date scheduled for the Sale Hearing.

ff.  Closing. The closing to the Successful Bidder shall take place at the offices of
counsel to the Debtor Robins Kaplan LLP, 601 Lexington Blvd, New York, New
York 10018 by no later than December 18, 2015.

gg. Return of Good Faith Deposit. Good Faith Deposits submitted by Qualified
Bidders (other than the Successful Bidder and the Next Highest Bidder) that have
not been forfeited shall be returned within two (2) business days of the entry of
the Confirmation Order or the Sale Order or such other time agreed upon by the
Qualified Bidder and the Debtor. The Good Faith Deposit of the Successful
Bidder shall be held until the closing of the Sale and applied in accordance with
the Purchase Agreement or the Modified Purchase Agreement, as applicable.
Within two (2) business days of the closing of the Sale under the Purchase
Agreement or the Modified Purchase Agreement, the Good Faith Deposit of the
Next Highest Bidder shall be returned to such Next Highest Bidder.

hh. Designation of Next Highest Bid. At the conclusion of the Auction and the
selection of the Successful Bidder, the Debtor will also announce the Next
Highest Bid and the Next Highest Bidder. The Next Highest Bid shall remain
open until the first business day following the closing of the Sale of the Property
to the Successful Bidder.

ii.  Failure to Close. If, following the entry of the Confirmation Order or the Sale
Order, the Successful Bidder fails to consummate the Sale because of a breach or
failure to perform on the part of the Successful Bidder, the defaulting Successful
Bidder's Good Faith Deposit shall be retained by the Debtor as liquidated
damages.  Additionally, if the Successful Bidder fails to close the Sale, the Debtor
may, without further Bankruptcy Court approval, designate the Next Highest
Bid of the Next Highest Bidder to close the Sale of the Property by giving such
Next Highest Bidder 10 days notice of such election which Next Highest Bidder
will then be required to close but only in accordance with the timing provisions
of 10.1 and 10.5 of the Purchase Agreement.

## RELIEF REQUESTED

20.    By this Motion, the Debtor requests entry of the Procedures Order as

contemplated by General Order M-383 (i) approving the Sale Procedures, (ii) approving

the Bidding Protections, and (iii) scheduling an Auction and, if requested by the Debtor,

a separate Sale Hearing with respect to the Sale in the event a Qualified Bid from an

entity other than Purchaser is timely received. In addition, provided that the Court

enters the Procedures Order and the Debtor elects to hold a separate Sale Hearing, the

Debtor further requests entry of the Sale Order, upon completion of the Sale Hearing (i)

authorizing and approving the Sale to Purchaser or any other Successful Bidder, as the

case may be, free and clear of all liens, claims, interests or encumbrances, (ii) approving

the Purchase Agreement and (iii) granting related relief, including the Debtor's right to

recover the reasonable, necessary costs and expenses of preserving, or disposing of the

Property from the proceeds of the Sale.

## BASES FOR REQUESTED RELIEF

### D.    The Break-up Fee to Purchaser is Appropriate

21.    The Purchase Agreement provides that the Purchaser will be entitled to a

break-up fee of $750,000, only if the Debtor closes with a Successful Bidder other than

Purchaser on an alternative transaction, or if the Debtor retains the property or

otherwise defaults in closing with the Purchaser.  In the Southern District of New York,

it is common for a stalking horse bidder to receive a break-up fee equal to 2% to 3% of

the purchase price plus expense reimbursement. *See Official Committee of Subordinated*

*Bondholders v. Integrated Resources Inc. (In re Integrated Resources Inc.)*, 147 B.R. 650, 662

(S.D.N.Y. 1992).

22.    Here, the Debtor negotiated with the Purchaser for a break-up fee of $750,000

(approximately 2% of the Purchase Price). It is respectfully submitted that if the

Purchaser's offer establishes the floor which leads to the sale of the Property to another

interested party, the proposed break-up fee and expense reimbursement is appropriate.

**E.    The Sale of the Property is Within the Debtor's Sound Business Judgment**

23.    The Debtor contemplates that the Sale will be consummated in connection

with the confirmation of the Plan. However, the Debtor reserves the right, at its sole

election if there is an Auction, to seek approval of the Sale at the Sale Hearing,

otherwise the Purchaser and the Debtor will collectively determine the most expedient

and reasonable method to obtain approval of the Sale.

24.    Bankruptcy Code § 363(b)(1) provides: "[t]he Debtor, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property

of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in

relevant part: "[t]he Court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.    A debtor should be authorized to sell assets out of the ordinary course of

business pursuant to Bankruptcy Code § 363 and if it demonstrates a sound business

purpose for doing so. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,

722 F.2d 1063, 1070 (2d Cir. 1983); *see also Titusville Country Club v. Pennbank (In re*

*Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (stating that "sound

business purpose test" is appropriate); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 177 (D.

Del. 1991) (sale of substantially all of debtor's assets outside of reorganization plan is

appropriate when sound business reason justifies such sale).

26.    Courts have applied four factors in determining whether a sound business
justification exists: (i) whether a sound business reason exists for the proposed
transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the
transaction has been proposed and negotiated in good faith; and (iv) whether adequate
and reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth "sound
business" purpose test); *see also Del. & Hudson Ry.*, 124 B.R. at 175 (adopting *Lionel*
factors in determining whether sound business purpose exists for sale outside ordinary
course of business); *cf. In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147-49 (3d Cir. 1986)
(implicitly adopting articulated business justification test of Lionel and adding "good
faith" requirement).

27.    Here, each of the four factors has been satisfied. First, there is more than
adequate business justification to sell the Property to Purchaser and to enter into the
Purchase Agreement. To the best of the Debtor's knowledge, the Purchaser's offer
exceeds the total amount of secured claims against the Property. After payment of
administrative expenses, the sale of the Property is anticipated to pay all unsecured
creditors in the Debtor's estate. The Debtor's unsecured creditors total only $330,859.00,
according to the Debtor's schedules.

28.    With respect to the second factor, Purchaser has offered substantial value for
the Property and is prepared to consummate the transaction upon Bankruptcy Court
approval and the other terms and conditions of the Purchase Agreement. As set forth
above, the Purchase Agreement requires Purchaser to pay at least $37,300,000 in
consideration for the Property. The Debtor respectfully submits that such consideration

is both fair and reasonable for the Property, based on a study of what comparable

commercial properties are selling for in the area near where the Property is situated.

29.    The Property was the object of a thorough marketing process by the Real

Estate Advisor prior to the Petition Date and will be again thoroughly marketed by the

Real Estate Advisor. Moreover, the sale of the Property to Purchaser is subject to

competing bids, thereby enhancing the Debtor's ability to receive the highest or best

value for the Property. Consequently, the fairness and reasonableness of the

consideration to be received by the Debtor will ultimately be demonstrated by a

"market check" through the auction process, which is the best means for establishing

whether a fair and reasonable price is being paid. *See Gucci*, 126 F.3d at 390 ("where the

purchaser is found to have acted in good faith the auction price suffices to demonstrate

that the purchaser paid 'value' for the assets").

30.    As to the third factor, the Debtor and Purchaser are proceeding in good faith.

The Purchaser is not personally known to the Debtor and the Purchase Agreement was

negotiated without collusion, in good faith and at arms'-length. The sale of the Property

still reflects the highest and best price for it. As such, this third *Lionel* factor has been

met.

31.    With respect to the last factor, as described more fully below in the <u>Notice</u>

<u>and Publication</u> section, the Debtor will provide adequate and reasonable notice of the

proposed sale of the Property in a recognized publication. The Sale Procedures

contemplate a bid deadline of November 5, 2015; thus, providing any interested parties

with sufficient time to conduct their due diligence in order to determine whether to

proceed with a bid to acquire the Property.

32.     Under these circumstances, therefore, sound business reasons exist that

justify the sale of the Property outside the ordinary course of business. Accordingly, this

Court should approve the Sale.

**F.     Purchaser or Successful Bidder Should be Entitled
        to the Protections of Bankruptcy Code § 363(m)**

33.     Pursuant to Bankruptcy Code § 363(m), a good faith purchaser is one who

purchases assets for value, in good faith, and without notice of adverse claims. *See*

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997); *In re Mark*

*Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Abbotts Dairies of Pa., Inc.*,

788 F.2d at 147; *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

34.     The Purchase Agreement is the product of extensive arms'-length

negotiations between the Debtor and Purchaser. These negotiations have involved

substantial time and energy by the parties and their professionals, and the Purchase

Agreement reflects give-and-take and compromises by both sides. Additionally, the

Sale Procedures ensure that a prospective purchaser will not be able to exert any undue

influence over the Debtor. Under the circumstances, this Court should therefore find

that (i) the sale of the Property was without collusion and is the result of good faith

arms'-length negotiations and (ii) Purchaser or the Successful Bidder is entitled to all of

the protections of Bankruptcy Code § 363(m).

**G.    The Sale Satisfies the Requirements of Bankruptcy Code § 363(f)**
**for a Sale Free and Clear of Liens, Claims, Interests or Encumbrances**

35.    While the Debtor believes that the only liens on the Property relate to the

Secured Notes of 33 Peck Slip Hotel Capital LLC, out of an abundance of caution, it is

seeking a finding, pursuant to Bankruptcy Code § 363(f), to the extent that there are

other junior liens on the Property. Under Bankruptcy Code § 363(f), a Debtor may sell

property free and clear of any interest in such property of an entity other than the estate

only if, among other things:

> (1)    applicable non-bankruptcy law permits sale of such property free and
>         clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold
>         is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to
>         accept a money satisfaction of such interest.

11. U.S.C. § 363(f). Because Bankruptcy Code § 363(f) is drafted in the disjunctive,

satisfaction of anyone of its five (5) requirements will suffice to approve the sale of the

Property "free and clear" of liens, claims, interests or encumbrances (collectively, the

"Encumbrances"). *See* 11 U.S.C. § 363(f); *Mich. Employment Sec. Comm'n v. Wolverine*

*Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (recognizing

that Bankruptcy Code § 363(f) is written in disjunctive, and holding that court may

approve sale "free and clear" provided that at least one subsection of § 363(f) is met),

*cert. dismissed*, 503 U.S. 978 (1992); *Citicom Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94

B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re THQ Inc.*, 2013 WL 428623 (Bankr. D.

Del. Jan. 24, 2013) (entry of sale order free and clear of liens, claims, and encumbrances,

including claims under Fair Labor Standards Act); *see In re PTC Alliance Corp.*, 2010 WL 5054211 (Bankr. D. Del. 2010) (same); *see also Precision Industries, Inc. v. Qualitech Steel SBQ*, LLC, 327 F.3d 537 (7th Cir. 2003) (entry of sale order free and clear of lease); *see also Cheslock-Bakker & Associates, Inc. v. Kremer (In re Downtown Athletic Club of New York City, Inc.)*, 2000 WL 744126 (S.D.N.Y., 2000) (same).

36.    To the extent that any liens exist on the Property, the Debtor is confident that it will obtain any necessary consent on or before the Sale Hearing, thereby satisfying Bankruptcy Code § 363(f)(2). Additionally, it is anticipated that the proceeds from the sale of the Property will exceed the value of any liens on the Property, thereby satisfying Bankruptcy Code § 363(f)(3). Finally, the other provisions of Bankruptcy Code § 363(f) may also apply to certain liens and interests.

## NO PRIOR REQUEST

37.    No previous request for the relief sought herein has been made to this or any other Court.

## NOTICE AND PUBLICATION

38.    The Debtor proposes to serve notice of the Motion by U.S. Mail to (i) the Office of the United States Trustee for the Southern District of New York; (ii) all creditors; (iii) counsel to Purchaser; (iv) the Internal Revenue Service and (v) all other parties that have filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 2002 (the "Bidding Procedures Notice Parties").

39.     Provided the Court enters the proposed Procedures Order, the Debtor requests that pursuant to the Procedures Order, no later than three (3) business days after entry of the Procedures Order, the Debtor (or its agents) shall serve a copy of the Procedures Order (including the Notice of Auction and Sale Hearing substantially in the form attached as **Exhibit "C"** hereto) upon the following by first-class mail: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to Purchaser; (iii) all federal, state and local regulatory or taxing authorities or recording offices that are reasonably known by the Debtor to have an interest in the relief requested by this Motion; (iv) all parties known by the Debtor to have expressed a bona fide interest in acquiring the Property; (v) the Internal Revenue Service; (vi) the United States Attorney's office; (vii) all known creditors of the Debtor (or their counsel, if represented by counsel), and (viii) all entities who have filed a notice of appearance and request for service of papers in the Debtor's case (collectively, the "Auction and Sale Notice Parties").

40.     The Debtor (or its agents) shall arrange to place advertisements in **The New York Times and The Wall Street Journal** (the "Advertisements") advertising the Sale of the Property and advising interested parties of the Bid Deadline, date of the Auction and how such parties could receive additional information. The Advertisements shall contain the salient terms set forth in the Notice of Auction and be published as promptly as possible after entry of the Procedures Order.

41.     The Debtor believes that the foregoing notice procedures to the Bidding Procedures Notice Parties, the Auction and Sale Notice Parties and other parties in

interest is sufficient to provide effective notice of the Sale Procedures, the Auction and

the Sale to potentially interested parties in a manner designed to maximize the chance

of obtaining the broadest possible participation while minimizing the costs to the estate.

Accordingly, the Debtor requests that the Court find that notice in this manner is

sufficient and that no further notice of the Sale Procedures or the Auction is required.

WHEREFORE, the Debtor respectfully requests that this Court enter the

Procedures Order (attached hereto as Exhibit "D"): after a hearing (a) approving the

Sale Procedures; (b) scheduling an Auction and, if requested under the Sale Procedures,

a Sale Hearing; and (c) approving the Notice of Auction and Sale Hearing. In addition,

the Debtor respectfully requests that, if the Debtor elects at or after the Bid Procedures

Hearing to schedule a separate Sale Hearing, this Court at the Sale Hearing enter an

order: (a) authorizing the Debtor to sell the Property free and clear of all liens, claims,

interests or encumbrances, and (b) approving the Purchase Agreement. The Debtor

further requests that this Court grant such other and further relief as is just and proper.

Dated: New York, New York
       September 8, 2015

                              ROBINS KAPLAN LLP


                              By:/s/  David B. Shemano
                              David B. Shemano, Esq.
                              601 Lexington Avenue
                              Suite 3400
                              New York, NY 10022-4611
                              Tel:  (212) 980-7400
                              Fax:  (212) 980-7499

                              -and-

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax:  (310) 229-5800

*Proposed Counsel for Debtor and Debtor in
Possession*