UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____   Chapter 11

In re:

　　　2700 JEROME AVE. REALTY CORP.,   Case No. 13-10699 (SHL)
　　　　　　　　　　　　　Debtor.

_____

## ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING PLAN

The Amended Plan (the "Plan") under Chapter 11 of the Bankruptcy Code filed by 2700 Jerome Avenue Realty Corp. (the "Debtor") on August 28, 2013 having been transmitted to creditors and equity security holders together with a copy of the Amended Disclosure Statement (the "Disclosure Statement") conditionally approved by the Court on September 25, 2013 with Order entered on October 8, 2013; and

It having been determined after notice and a hearing that the requirements for final approval of the Disclosure Statement have been satisfied, and it having been determined after a hearing on notice that the requirements for confirmation of the Plan under 11 U.S.C. § 1129 have been satisfied:

**IT IS ORDERED** that:

1.　　　The Disclosure Statement filed by the Debtor on October 9, 2013 is finally approved.

2.　　　The Plan filed by the Debtor on August 28, 2013 is confirmed under section 1129 of the Bankruptcy Code. A copy of the confirmed Plan is attached.

3.　　　The "effective date" of this Plan is the eleventh business day following the date of the entry of this order of confirmation.

4.　　　The Debtor's executory contract with Jacob Rad (contract dated March 22, 2012 with a Second Amendment dated August 1, 2012) regarding the sale of Debtor's real property known as 2700 Jerome Avenue, Bronx, NY 10467 (the "Premises") is rejected.

5.　　　Upon the effective date of this Plan, the Debtor shall authorize and direct the release and return of Jacob Rad's $100,000 down payment held in escrow by attorney Jaime Ramirez (NY

bar registration number 2001394) in connection with said rejected Jacob Rad executory contract.

6.    A proof of a claim, if any, arising from the rejection of the executory contract with Jacob Rad must be filed with the Clerk of the Court no later than sixty (60) days after the date of entry of the order confirming this Plan.

7.    The Debtor shall have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

8.    The Debtor's contract of sale with its rider, both dated July 22nd 2013, for the sale of its Premises for $5,500,000 to APT NYC DEVELOPMENT 2700 LLC is approved and assumed.

9.    The sale of the Premises shall be transfer-tax exempt in accordance with section 1146(a) of the Bankruptcy Code, which provides as follows: "The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."

10.    Funds from the sale of the Premises shall pay all allowed claims in full at the title closing. And funds shall be further held in escrow to the extent necessary to ensure payment in full on all disputed claims herein until said claims are finally allowed and paid or until said claims are finally disallowed.

11.    Upon payment in full on their claims, all mortgagee creditors and judgment creditors and lien creditors with respect to the Premises shall forthwith issue satisfactions, vacate their judgments, release their liens, cancel any notice of pendency, and discontinue any pending related court actions.

12.    In accordance with section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

13.    Until entry of the final decree, or until the case is converted or dismissed, the Debtor shall file monthly reports of disbursements and serve copies thereof on the Office of the U.S. Trustee.

14.    Until entry of the final decree, or until the case is converted or dismissed, the Debtor shall pay quarterly fees to the U.S. Trustee in accordance with 28 U.S.C. § 1930(a)(6).

15.    Additional provisions set forth in the Plan shall apply unless they are inconsistent with a specific provision of this Order.  If any provision of the Plan is inconsistent with this Order, the provisions of this Order shall control.

16.    The Court shall retain exclusive jurisdiction for the following purposes:

(a)  to determine all objections to Claims;

(b)  to permit amendments to Schedules;

(c)  to determine all Administrative Claims including, without limitation, applications for the allowance of compensation and reimbursement of expenses, provided that applications for allowance of compensation and reimbursement of expenses shall be filed within 300 days after the effective date of this Plan;

(d)  to estimate all Disputed Claims;

(e)  to determine all applications and adversary proceedings pending on the effective date of this Plan or filed or commenced within 300 days thereafter;

(f)  to determine all disputes concerning the interpretation of the Plan and to correct any defect, cure any omission, reconcile any inconsistency in the Plan;

(g)  to enforce any orders, including the Confirmation Order, entered in connection with Debtor's Chapter 11 case.

(h)  to enter such orders as may be necessary or appropriate in aid of confirmation and to

facilitate the Plan, including full and continuing jurisdiction over the postpetition contract for the

sale of Debtor's Premises and any disputes, issues, and matters relating thereto;

 (i) to modify the Plan to the full extent permitted by the Code;

 (j) to determine such other matters as may be provided for in the Confirmation Order; and

 (k) to enter a Final Order closing Debtor's Chapter 11 case.

Dated: New York, New York
   November 14, 2013

        **/s/ Sean H. Lane**
        United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————    Chapter 11

In re:

    2700 JEROME AVE. REALTY CORP.,    Case No. 13-10699 (SHL)

                Debtor.

——————————————————————


## DEBTOR'S AMENDED PLAN OF REORGANIZATION


### ARTICLE I
### <u>SUMMARY</u>

This Plan of Reorganization ("Plan") under Chapter 11 of the Bankruptcy Code ("Code") proposes to pay creditors of 2700 Jerome Ave. Realty Corp. ("Debtor") in full from the sale of its real property known as 2700 Jerome Avenue, Bronx, NY 10467 ("Premises") at the title closing.

This Plan provides for one class of priority claims, two classes of secured claims; one class of escrow-refund claim, one class of unsecured nonpriority claims; and one class of equity security holders. Unsecured nonpriority creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately one-hundred cents on the dollar. This Plan also provides for the payment of administrative and priority claims if payment is not in full on the effective date of this Plan with respect to any such claim (to the extent permitted by the Code or the claimant's agreement).

All creditors and equity security holders should refer to Articles III through

VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS

2.01  Class 1.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02  Class 2.  The claims of the New York State Department of Taxation and Finance, the New York City Department of Finance, the New York City Water Board, and the New York City Environmental Control Board, to the extent allowed as secured claims under § 506 of the Code.

2.03  Class 3.  The claims of 2700 Funding Corp. (assignee of mortgages from BNB Bank), MJA Financial LLC, Carmen Berrios, and Lawrence J. Berger, P.C. to the extent allowed as secured claims under § 506 of the Code.

2.04  Class 4.  The claim of Jacob Rad for a refund of his escrowed down payment in connection with the rejection herein of the executory

2

contract of sale of the Premises to him, to the extent allowed as a

secured claim under § 506 of the Code or otherwise allowed as an

unsecured claim under § 502 of the Code.

2.04  <u>Class 5</u>.  But for a Jacob Rad escrow-refund claim, all unsecured claims

allowed under § 502 of the Code, to include the claims of the

Internal Revenue Service and the New York State Department of

Taxation and Finance.

2.05  <u>Class 6</u>.  Equity interests of the Debtor: sole stockholder Carlos Abreu.

ARTICLE III
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
<u>U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS</u>

3.01  <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative

expense claims and priority tax claims are not in classes.

3.02  <u>Administrative Expense Claims</u>.  Each holder of an administrative

expense claim allowed under § 503 of the Code will be paid in full on the effective

date of this Plan (as defined in Article VII), in cash, or upon such other terms as

may be agreed upon by the holder of the claim and the Debtor: Debtor's attorney

fees shall be paid in full at the title closing in the sale of the Premises.

3.03  <u>Priority Tax Claims</u>.  Each holder of a priority tax claim — including

the Internal Revenue Service, the New York State Department of Taxation and

Finance, and the New York City Department of Finance — shall be paid in full at

the title closing in the sale of the Premises.

3.04  <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

ARTICLE IV
<u>TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>

4.01  Claims and interests shall be treated as follows under this Plan:

| <u>Class</u> | <u>Impairment</u> | <u>Treatment</u> |
|---|---|---|
| 1 | Unimpaired | Full payment at the title closing in the sale of the Premises. |
| 2 | Unimpaired | Full payment at the title closing in the sale of the Premises. |
| 3 | Unimpaired | Full payment at the title closing in the sale of the Premises. |
| 4 | Unimpaired | Full payment upon the effective date of this Plan, as defined in Article VIII, by Debtor's authorization for the release and return of Jacob Rad's down payment held in escrow. |
| 5 | Unimpaired | Full payment at the title closing in the sale of the Premises. |
| 6 | Unimpaired | Carlos Abreu to retain his full stock ownership in Debtor. |

ARTICLE V
<u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

5.01  <u>Disputed Claim</u>.  A disputed claim is a claim that has not been

4

allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

ARTICLE VI
PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01   Assumed Executory Contracts and Unexpired Leases.

(a)   Debtor assumes the following executory contracts and/or unexpired leases: the contract of sale with its rider, both dated July 22nd 2013, for the sale of the Premises for $5,500,000 to APT NYC DEVELOPMENT 2700 LLC with payment of broker's commission of $275,000 to Prela Global Group, LLC. The confirmation of this Plan shall be Court approval of said executory contract with its rider.

(b)  Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above. A proof of a claim arising from the rejection of an executory contract or

5

unexpired lease under this section must be filed no later than sixty (60) days after the date of the order confirming this Plan. In particular, Debtor rejects the executory contract with Jacob Rad (contract dated March 22, 2012 with a Second Amendment dated August 1, 2012) regarding the sale of the Premises. The confirmation of this Plan shall be Court approval of Debtor's rejection of said Jacob Rad executory contract.

ARTICLE VII
MEANS FOR IMPLEMENTATION OF THE PLAN

7.01  Debtor will pay its creditors from the sale of its Premises at the title closing pursuant to confirmation of the Plan: Debtor's contract of sale with its rider, both dated July 22nd 2013, for the sale of the Premises for $5,500,000 to APT NYC DEVELOPMENT 2700 LLC with payment of broker's commission of $275,000 to Prela Global Group, LLC is attached and incorporated herein by reference.

7.02  Funds from the sale of the Premises shall pay all allowed claims in full at the title closing. And funds shall be further held in escrow to the extent necessary to ensure payment in full on all disputed claims herein until said claims are finally allowed and paid or until said claims are finally disallowed.

7.03  Debtor shall hold in escrow the sum of $100,000 in connection with payment of administrative expenses, with disbursement subject to Court approval.

7.04   Debtor shall retain all residual funds after payment in full of all allowed claims.

7.05  Upon the effective date of this Plan, as defined in Article VIII, Debtor shall authorize and direct the release and return of Jacob Rad's $100,000 down payment held in escrow by attorney Jaime Ramirez (NY bar registration number 2001394) in connection with the Jacob Rad executory contract that is rejected through this Plan.

ARTICLE VIII
GENERAL PROVISIONS

8.01  Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code (hereinafter "Code") shall apply when terms defined or construed in the Code are used in this Plan. They are supplemented by the following definitions:

- "Premises" means the Debtor's real property known as 2700 Jerome Avenue, Bronx, NY 10467 and also known as Bronx County: Tax Section 12, Tax Block 3317, Tax Lot 17; and

- "Closing" or "title closing" means the settlement of the obligations of the Debtor as Seller and the obligations of the Purchaser to each other under the contract of sale with its rider, both dated July 22nd 2013, for the sale of the Premises for $5,500,000 and includes the payment of that much of the purchase price that is sufficient to pay all claims herein in full, and the corresponding delivery to the Purchaser of the deed to the Premises.

8.02  Effective Date of Plan.  The "effective date" of this Plan is the eleventh business day following the date of the entry of the order of confirmation. But if a

7

stay of the confirmation order is in effect on that date, the effective date will be the

first business day after that date on which no stay of the confirmation order is in

effect, provided that the confirmation order has not been vacated.

8.03   <u>Severability</u>.   If any provision in this Plan is determined to be

unenforceable, the determination will in no way limit or affect the enforceability

and operative effect of any other provision of this Plan.

8.04   <u>Binding Effect</u>.   The rights and obligations of any entity named or

referred to in this Plan will be binding upon, and will inure to the benefit of the

successors or assigns of such entity.

8.05   <u>Captions</u>.   The headings contained in this Plan are for convenience of

reference only and do not affect the meaning or interpretation of this Plan.

8.06   <u>Controlling Effect</u>.   Except as otherwise provided in this Plan, unless

a rule of law or procedure is supplied by federal law (including the Code or the

Federal Rules of Bankruptcy Procedure), the laws of the State of New York shall

govern this Plan and any agreements, documents, and instruments executed in

connection with this Plan.

8.07   <u>Corporate Governance</u>.   In accordance with § 1123(a)(6) of the Code,

Debtor shall continue as a privately held corporation with its one class of stock.


ARTICLE IX
<u>NO DISCHARGE OF DEBTOR</u>

9.01   <u>No Discharge</u>.   In accordance with § 1141(d)(3) of the Code, the Debtor

8

will not receive any discharge of debt in this bankruptcy case.

ARTICLE X
OTHER PROVISIONS

10.01  Debtor reserves the right to amend or modify the Plan to the full extent permitted by law.

10.02  Debtor shall have a ten day grace period to make any payment required under the Plan. Partial pre-payments by the Debtor shall be applied against the payments in the inverse order of their due date.

10.03  Upon payment in full on their claims, all mortgagee and judgment creditors with respect to the Premises shall forthwith issue satisfactions, vacate their judgments, release their liens, cancel any notice of pendency, and discontinue any pending related court actions.

10.04  The Court shall retain exclusive jurisdiction for the following purposes:

(a)  to determine all objections to Claims;

(b)  to permit amendments to Schedules;

(c)  to determine all Administrative Claims including, without limitation, applications for the allowance of compensation and reimbursement of expenses, provided that applications for allowance of compensation and reimbursement of expenses shall be filed within 300 days after the effective date of this Plan;

(d)  to estimate all Disputed Claims;

9

(e)  to determine all applications and adversary proceedings pending on the effective date of this Plan or filed or commenced within 300 days thereafter;

(f)  to determine all disputes concerning the interpretation of the Plan and to correct any defect, cure any omission, reconcile any inconsistency in the Plan;

(g)  to enforce any orders, including the Confirmation Order, entered in connection with Debtor's Chapter 11 case.

(h)  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate the Plan, including full and continuing jurisdiction over the postpetition contract for the sale of Debtor's Premises and any disputes, issues, and matters relating thereto;

(i)  to modify the Plan to the full extent permitted by the Code;

(j)  to determine such other matters as may be provided for in the Confirmation Order; and

(k)  to enter a Final Order closing Debtor's Chapter 11 case.

Dated:     New York, New York
           August 27, 2013

                                    Respectfully submitted,

                                    2700 Jerome Ave. Realty Corp.

                                    By:   _/s/ Carlos Abreu_____
                                              Carlos Abreu, President

                                    Albert H. Barkey
                                    Attorney for Debtor

                                    By:   _/s/ Albert H. Barkey_____
                                              Albert H. Barkey
                                    277 Broadway, Suite 408
                                    New York, NY 10007
                                    (212) 677-5776
                                    ahboffice@yahoo.com

154 Contract of sale for New York office, commercial and multi-family
residential premises. 2-95

Distributed by Julius Blumberg, Inc.
NYC 10013

Prepared by the Real Property Committee of the Association of the Bar of the City of New York.

*NOTE: This form is intended to cover matters common to most transactions. Provisions should be added, altered or deleted to suit the circumstances of a particular transaction.*

## Contract of Sale — Office, Commercial and Multi-Family Residential Premises

### Table of Contents

Section 1.  Sale of premises and acceptable title

Section 2.  Purchase price, acceptable funds, existing mortgages, purchase money mortgage, escrow of downpayment and foreign persons

Section 3.  The closing

Section 4.  Representations and warranties of seller

Section 5.  Acknowledgements of purchaser

Section 6.  Seller's obligations as to leases

Section 7.  Responsibility for violations

Section 8.  Destruction, damage or condemnation

Section 9.  Covenants of seller

Section 10.  Seller's closing obligations

Section 11.  Purchaser's closing obligations

Section 12.  Apportionments

Section 13.  Objections to title, failure of seller or purchaser to perform and vendee's lien

Section 14.  Broker

Section 15.  Notices

Section 16.  Limitations on survival of representations, warranties, covenants and other obligations

Section 17.  Gains tax and miscellaneous provisions

Signatures and acknowledgement by escrowee

Schedule A.  Description of premises (to be attached)

Schedule B.  Permitted exceptions

Schedule C.  Purchase price

Schedule D.  Miscellaneous

Schedule E.  Rent schedule (to be attached)

CONTRACT dated   July 22nd , 2013   between

2700 JEROME AVE. REALTY CORP. c/o Albert H. Barkey, Esq.
277 Broadway, Suite 408, New York, New York 10007

("Seller") and

APT NYC DEVELOPMENT 2700 LLC, c/o Laurence J. Bellom, Esq.
814 Commerce Street, Thornwood, New York 10594

("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

### Section 1. Sale of Premises and Acceptable Title

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract: (a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, "Building"); (c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway; (d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and (e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as

2700 Jerome Avenue, Bronx, NY 10468
Bronx County Tax Sec. 12, Block 3317,
Tax Lot 17 .

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to: (a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and (b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any title

insurer licensed to do business by the State of New York) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

### Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage, Escrow of Downpayment and Foreign Persons

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $ 5,500,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by (a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or (b) official bank checks drawn by any such banking insitution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

Contract & Rider Doc 24-1 Filed 08/28/13 both dated 7-22-2013 Entered 08/28/13 01:37:36 Pg 1 of 25
13-10699-shl

§2.03. (a) If Schedule C provides for the conveyance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required thereunder prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contract, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent (i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or (ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02. If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).

§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the most recent forms of the New York Board of Title Underwriters for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefor and the filing fees for any financing statements delivered in connection therewith.

(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii) if the principal amount of the Refinanced Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due thereunder in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagor to confirm such subordination.

(c) The Purchase Money Mortgage shall contain the following additional provisions:

(i) "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], on not less than 10 days' written notice to the holder hereof."

(ii) "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or un-

disclosed, be personally liable for any breach or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii) "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a, agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv) "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any, specified in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

§2.06. In the event that Seller is a "foreign person", as defined in Internal Revenue Code Section 1445 and regulations issued thereunder (collectively, the "Code Withholding Section"), or in the event that Seller fails to deliver the certification of non-foreign status required under §10.12(c), or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certification, Purchaser shall deduct and withhold from the Purchase Price a sum equal to ten percent (10%) thereof and shall at Closing remit the withheld

13-10699-scc Doc 42 Filed 11/04/13 Entered 11/04/13 12:53:1 Main Document

amount with Forms 8288 and 8288-A (or any successors thereto) to the Internal Revenue Service, and shall credit the amount of the Purchase Price payable to Seller at the Closing after deduction of net adjustments, apportionments and credits (if any) to be made or allowed in favor of Seller at the Closing as herein provided is less than ten percent (10%) of the Purchase Price, Purchaser shall have the right to terminate this contract, in which event Seller shall refund the Downpayment to Purchaser and shall reimburse Purchaser for title examination and survey costs as if this contract were terminated pursuant to §13.02. The right of termination provided for in this §2.06 shall be in addition to and not in limitation of any other rights or remedies available to Purchaser under applicable law.

## Section 3. The Closing

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

## Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein as of the date hereof, and there are no Leases or tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;

(b) no renewal or extension options have been granted to tenants;

(c) no tenant has an option to purchase the Premises;

(d) the rents set forth are being collected on a current basis and there are no arrearages in excess of one month;

(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or

diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

§4.14. Seller is not a "foreign person" as defined in the Code Withholding Section.

## Section 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

## Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld: (a) amend, renew or extend any Lease in any respect, unless required by law; (b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or (c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with (a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and (b) a

13-10699-shl    Doc 24-1    Filed 08/28/13    Entered 08/28/13 01:37:36    Exhibit 2 - Contract of Sale    Pg 22 of 40

statement of the amount of the brokerage commission, if any, payable in connection with such lease, and shall pay the broker thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease or Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchase Price or give rise to any other claim on the part of Purchaser.

§6.05. Seller hereby indemnifies and agrees to defend Purchaser against any claims made pursuant to §7 -107 or §7-108 of the General Obligations Law (the "GOL") by tenants who resided in the Premises on or prior to the Closing Date other than (a) claims with respect to tenants' security deposits paid, credited or assigned to Purchaser pursuant to §10.03, (b) claims made pursuant to §7-107 of the GOL with respect to funds for which Seller was not liable, and (c) claims made pursuant to §7-108 of the GOL by tenants to whom Purchaser failed to give the written notice specified in §7-108(c) of the GOL within thirty days after the Closing Date. The foregoing indemnity and agreement shall survive the Closing and shall be in lieu of any escrow permitted by §7-108(d) of the GOL, and Purchaser hereby waives any right it may have to require any such escrow.

### Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if (a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or (b) the Building is a multiple dwelling and either (i) such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or (ii) a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole

liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy shall not be an objection to title. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of a violation described above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

### Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

### Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

§9.01. The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless the same is terminable without penalty by the then owner of the Premises upon not more than 30 days' notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

### Section 10. Seller's Closing Obligations

At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all security deposits (and, if the Premises contains six or more family dwelling units, the most recent reports with respect thereto issued by each banking organization in which they are deposited pursuant to GOL §7 -103) and a check or credit to Purchaser in the amount of any cash security deposits, including any interest thereon, held by Seller on the Closing Date or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any security deposits which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

tracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and (b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s). Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Insitutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12(a) Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof, (b) the Tentative Assessment and Return or Statement of No Tax Due or affidavit (whichever is applicable) and the checks and other items (if any) required under §17.09(a), and (c) a certification of non-foreign status, in form required by the Code Withholding Section, signed under penalty of perjury. Seller understands that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

### Section 11. Purchaser's Closing Obligations

At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

### Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:

(a) prepaid rents and Additional Rents (as defined in §12.03);

(b) interest on the Existing Mortgage(s);

(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;

(d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;

(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;

(f) charges under transferable Service Contracts or permitted renewals or replacements thereof;

(g) permitted administrative charges, if any, on tenants' security deposits;

(h) dues to rent stabilization associations, if any;

(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

(j) Reletting Expenses under §6.02, if any; and

(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority: (a) first to the month preceding the month in which the Closing occurred; (b) then to the month in which the Closing occurred; (c) then to any month or months following the month in which the Closing occurred; and (d) then to the period prior to the month preceding the month in which the Closing occurred. If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

### Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Pur-

chaser may terminate this contract by notice to Seller and shall be refunded the Downpayment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03. Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

### Section 14.   Broker

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

### Section 15.   Notices

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.

### Section 16.   Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and

the representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Schedule D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02. The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

### Section 17.   Gains Tax and Miscellaneous Provisions

§17.01. If consent of the Existing Mortgagee(s) is required under §2.03(b), Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

§17.09. (a) Seller and Purchaser agree to comply in a timely manner with the requirements of Article 31-B of the Tax Law of the State of New York and the regulations applicable thereto, as the same from time to time may be amended (collectively, the "Gains Tax Law"). Purchaser agrees to deliver to Seller a duly executed and acknowledged Transferee Questionnaire simultaneously with the execution of this contract or within five (5) business days after subsequent written request from Seller or Seller's attorney. At the Closing, Seller shall deliver (i) an official Statement of No Tax Due or (ii) an official Tentative Assessment and Return accompanied by a certified check or official bank check drawn on any banking institution described in §2.02(a), payable to the order of the State Tax Commission in the amount of the tax shown to be due thereon (it being understood, however, that if Seller has duly elected to pay such tax in installments, the amount so required to be paid shall be the minimum installment of such tax then permitted to be paid), or (iii) if applicable, a duly executed and acknowledged affidavit in form permitted under the Gains Tax Law claiming exemption therefrom.

(b) Seller agrees (i) to pay promptly any installment(s) or additional tax due under the Gains Tax Law, and interest and penalties thereon, if any, which may be assessed or due after the Closing, (ii) to indemnify and save the Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorneys' fees) which may be suffered or incurred by Purchaser by reason of the non-payment thereof, and (iii) to make any other payments and execute, acknowledge and deliver such further documents as may be necessary to comply with the Gains Tax Law.

(c) If this contract is assignable by Purchaser, no assignment of any rights hereunder shall be effective unless every assignor and assignee complies in a timely manner with the requirements of the Gains Tax Law applicable to the assignment transaction and unless an assignor or assignee de-

livers to Seller at or before the Closing the applicable items referred to in subparagraph (a) of this Section, all as may be required as a prerequisite to the recording of the deed. In addition to making the payments and delivering the instruments and documents referred to above, Purchaser and any assignor or assignee of this contract shall promptly (i) make any other payments and (ii) execute, acknowledge and deliver such further documents and instruments as may be necessary to comply with the Gains Tax Law.

(d) Purchaser, if request is made within a reasonable time prior to the Closing Date, shall provide at the Closing a separate certified or official bank check drawn on any banking institution described in §2.02(a) in the amount of the tax shown to be due on the official Tentative Assessment and Return, which amount shall be credited against the balance of the Purchase Price payable at the Closing.

(e) The provisions of this §17.09 shall survive the delivery of the deed.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the date first above written.

Seller:  2700 JEROME AVE. REALTY CORP.

By: _Carlos Abreu_

Purchaser:  APT NYC DEVELOPMENT 2700 LLC

By: _Zef Kolaj_

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of ____ , by check subject to collection, to be held in escrow pursuant to §2.05.

Albert H. Barkey, Esq.

### Schedule A

DESCRIPTION OF PREMISES

(to be attached separately and to include tax map designation)

### Schedule B

PERMITTED EXCEPTIONS

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.
2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.
3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.
4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.
5. Unpaid installments of assessments not due and payable on or before the Closing Date.
6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7. (a) Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

(b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

(c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

**Schedule C**

**PURCHASE PRICE**

The Purchase Price shall be paid as follows:

    (a)  By check subject to collection, the receipt of which is hereby acknowledged by Seller:     $

    (b)  By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02:    **$ 5,250,000.00**

    (c)  By acceptance of title subject to the following Existing Mortgage(s):

Upon Court approval of this Contract of Sale    $   250,000.00

    (d)  By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, payable as follows:

**Purchase Price**    $ 5,500,000.00

**Schedule D**

**MISCELLANEOUS**

1. Title insurer designated by the parties (§1.02):
   TBD by Purchaser

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):
   N/A

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):  N/A

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):
   N/A

5. Seller's tax identification number (§2.05):
   13-4185756

6. Purchaser's tax identification number (§2.05):

7. Scheduled time and date of Closing (§3.01):
   see rider attached.

8. Place of Closing (§3.01):
   Law Offices of Laurence J. Bellom
   814 Commerce Street, Thornwood, NY 10594

9. Assessed valuation of Premises (§4.10):
   Actual Assessment:  N/A
   Transition Assessment:  N/A

10. Fiscal year and annual real estate taxes on Premises (§4.10):  TBD

11. Tax abatements or exemptions affecting Premises (§4.10):
    N/A

12. Assessments on Premises (§4.13):
    N/A

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02): see rider

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):    see rider

15. Broker, if any (§14.01):

    Prela Global Group, LLC
    980 Broadway  Suite 636, Thornwood, NY 10594

16. Party to pay broker's commission (§14.01):
    Seller

17. Address for notices (§15.01):
    If to Seller:  c/o Albert H. Barkey, Esq.
                   277 Broadway Suite 408
                   New York, NY 10007

    with a copy to Seller's attorney:

    Albert H. Barkey, Esq.
    277 Broadway, Suite 408 New York, NY 10007

    If to Purchaser:
                 c/o Laurence J. Bellom, Esq.
                 814 Commerce Street
                 Thornwood, NY 10594

    with a copy to Purchaser's attorney:

    Laurence J. Bellom, Esq.
    814 Commerce Street, Thornwood, NY 10594

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):
    N/A

19. Additional Schedules or Riders (§17.08):
    See Rider attached.

**Schedule E**

**RENT SCHEDULE**

(to be attached separately)

Rider to Contract of Sale dated July 22, 2013, between 2700 JEROME AVE. REALTY CORP.,

as Seller and APT NYC DEVELOPMENT 2700 LLC, as Purchaser of premises located at 2700 Jerome

Avenue, Bronx, New York 10468.   Dated: July 22, 2013.

1.    In the event of any conflict between the terms of the Printed Contract of sale and the terms of this

Rider, then the terms of this Rider shall govern and prevail. The parties to this Contract of Sale

( hereinafter "Contract")  , dated as of July 22, 2013, are:

a)  2700 JEROME AVE. REALTY CORP.  ( hereinafter "Seller")  , having a post office address of c/o

    Albert H. Barkey, Esq., 277 Broadway, Suite 408, New York, NY 10007;

b)  APT NYC DEVELOPMENT 2700 LLC, ( hereinafter Purchaser)  , having a post office address of

    c/o Laurence J. Bellom, Esq., 814 Commerce Street, Thornwood, NY 10594; and

c)  Prela Global Group LLC ( hereinafter "Broker")  , having a post office address of 980 Broadway,

    Suite 636, Thornwood, NY 10594.

d)  Albert H. Barkey as Escrowee  ( hereinafter Escrowee)  , having a post office address of 277

    Broadway, Suite 408, New York, NY 10007.

    1.    Seller hereby contracts to sell and convey its real property known as 2700 Jerome

Avenue, Bronx, NY 10468 and also known as Bronx County, Tax Section 12, Tax Block 3317, Tax Lot

13-10699-shl Doc 42 Filed 11/04/13 Entered 11/04/13 12:33:11 Main Document
13-10699-shl Approving Disclosure Statement & Confirming 1:37:36 Page 25 of 40 ract &
Rider both dated 7-22-2013 Pg 10 of 25

17 (hereinafter Premises) to Purchaser. Seller shall give and Purchasers shall accept such title as

any reputable title company shall be willing to approve and insure in accordance with its standard form

of title policy approved by the New York State Insurance Department, subject only to the other terms of

this Contract and the matters provided for herein. A true copy of the current deed in Seller's name is

attached and incorporated herein by reference.

2.      Time is of the essence in this Contract; the purchase price of the Premises is $5,500,000.

3.      The Premises is sold in an "as is" condition. And the Premises shall be vacant of tenants

and tenancies as of the closing on this Contract.

4.      This Contract is subject to and conditioned upon the following particular conjoint

approvals of the U.S. Bankruptcy Court for the Southern District of New York (hereinafter Court) in

Seller's extant Chapter 11 Case No. 13-10699-shl. This Contract must be approved by the Court as

part of Seller's confirmed Chapter 11 Plan so as to permit both Seller's transfer of the Premises and

said transfer occurring without Seller's payment of related NYS transfer taxes. And correspondingly,

Seller's rejection of the executory contract between Seller and Jacob Rad (contract dated March 22,

2012 with a Second Amendment thereto dated August 1, 2012) regarding the Premises must be

approved by the Court as part of Seller's confirmed Chapter 11 Plan.

5.      This Contract is subject to and conditioned upon the following environmental abatement

( hereinafter Abatement)    due-diligence timing and allocation of costs and expenses of cleanup:

.01    Purchaser shall perform all Abatement due diligence within 90 days after written notice to it of

Court approval of this Contract. Seller is aware of an apparent environmental hazard in the

ground,   gasoline/oil and car-wash runoff   at the Premises but not its extent nor cost of

abatement. Seller has no actual knowledge of lead-based paint and/or lead-based hazard in the

Premises; Seller has no reports or records pertaining to lead-based paint and/or lead-based

hazard in the Premises. And other environmental hazards  ( e.g., asbestos)   at the Premises

are conceivable but unknown and unlikely. Purchaser shall pay for all environmental testing,

etc., of the Premises to be done by an independent professional third party agreed to by Seller

and Purchaser   to determine the needed abatement particulars and the corresponding

estimated costs/expenses of cleanup. And Purchaser shall forthwith provide, and cause to be

provided,    said    environmental-testing    raw    data,    results,    reports,    summaries,    and

conclusions/estimates to Seller;

.02    The abatement report of the independent professional third party jointly chosen by Seller and

Purchaser shall determine for purposes of this Contract the cost of abatement. If Abatement is

professionally determined and estimated to cost more than $500,002, then this Contract may be

13-10699-sbbc Doc 42 Filed 11/14/13 Entered 11/14/13 12:23:13 Main Document
13-10699-shl Doc Disclosure Statement Confirmation Plan 01:37:36 27 of 40
Approving Disclosure Statement and Confirming Plan Contract &
Rider    both dated 7-22-2013    Pg 12 of 25

cancelled by either party, but for and subject to Seller's right, discretion, and decision at such

time in such event, by forthwith written notice to Purchaser, to pay (solely at closing by

crediting Purchaser as an adjustment to the purchase price) all costs/expenses of abatement

over $500,002 and up to $1,000,000. **Par. 5.03 below shall control the allocation of abatement**

**costs between Seller and Purchaser up to $500,002.** This Contract is cancelled if Abatement is

professionally determined and estimated to cost more than $1,000,000.

.03    If Abatement is professionally determined and estimated to cost less than $500,002, then:

!    Seller shall pay (solely at closing by crediting Purchaser as an adjustment to the purchase

price) the first $50,000 of abatement costs/expenses;

!    Purchaser shall pay the next $100,000 of abatement costs/expenses;

!    Seller shall pay (solely at closing by crediting Purchaser as an adjustment to the purchase

price) the next $33,333 of abatement costs/expenses;

!    Purchaser shall pay the next $66,667 of abatement costs/expenses;

!    Seller shall pay (solely at closing by crediting Purchaser as an adjustment to the purchase

price) the next $33,333 of abatement costs/expenses;

!    Purchaser shall pay the next $66,667 of abatement costs/expenses;

! Seller shall pay  (solely at closing by crediting Purchaser as an adjustment to the purchase

price)   the next $33,333 of abatement costs/expenses;

! Purchaser shall pay the next $66,667 of abatement costs/expenses;

! Seller shall pay  (solely at closing by crediting Purchaser as an adjustment to the purchase

price)   the next $33,333 of abatement costs/expenses;

! Purchaser shall pay the next $66,667 of abatement costs/expenses;

! Seller shall pay  (solely at closing by crediting Purchaser as an adjustment to the purchase

price)   the next $33,333 of abatement costs/expenses;

! Purchaser shall pay the next $66,667 of abatement costs/expenses;

! Seller shall pay  (solely at closing by crediting Purchaser as an adjustment to the purchase

price)   the next $33,333 of abatement costs/expenses; and

! Purchaser shall pay the next $66,667 of abatement costs/expenses.

.04        At title closing herein, the sum of $250,000 from the proceeds otherwise payable to

Seller, shall be retained in escrow by the Escrowee for the purpose of ensuring Seller's payments of

the cleanup costs in accordance with the allocation formula in Par. 5.03 above.

6.        This Contract is subject to and conditioned upon Purchaser securing, within 150 days

5

13-10699-scc Doc 421 Filed 11/13/19 Entered 11/13/19 12:56:11 Main Document
13-10699-scc Approving Disclosure Statement and Confirming Plan Pg 29 of Contract &
Rider both dated 7-22-2013 Pg 14 of 25

after written notice to it of Court approval of this Contract, at its sole cost and expense, secondary

private loans and/or the syndication for investor funds, or a firm commitment for a loan ( s ) , secured

or otherwise, as the case may be, totaling $5,500,000 or less as Purchaser shall choose to finance the

purchase and renovation of the Premises. In the event the loan commitment is not timely issued, then

Purchaser shall cancel this Contract by forthwith written notice to Seller.

7.     Purchaser agrees to close title notwithstanding any conceivable wood-destroying insect

infestation condition at the Premises. Purchaser has the option to have the Premises professionally

inspected for termite infestation at its own cost and expense within 30 days after written notice to it of

Court approval of this Contract. If active termite and/or other wood destroying insect infestation

condition is found at the Premises, then a copy of the report issued by the inspector shall be provided

to Seller within fourteen days thereafter ( 44 days after written notice of Court approval of this

Contract) . Seller shall pay ( solely at closing by crediting Purchaser as an adjustment to the purchase

price or by escrowing funds)   the first $2,000 of the cost and expense of curing said infestation. If

Purchaser fails to have the Premises inspected or fails to timely provide Seller with the inspector's

report, then Purchaser shall be deemed to have waived having Seller pay for the curing of any

conceivable infestation.

6

13-10699-scc Doc 42 Filed 11/13/19 Entered 11/13/19 23:53:11 Main Document
13-10699-scc Approving Disclosure Statement and Confirming Plan Pg 30 of 40 Contract &
Rider    both dated 7-22-2013    Pg 15 of 25

8.      All payments herein to, or for, Seller at closing shall be payable solely and only by good

certified funds, teller checks, official checks, money orders  ( or attorney trust account checks totalling

not more than $100,000)    issued by any bank, savings bank, trust company or savings and loan

association having a banking office in New York.

9.  Provided that they do not render title uninsurable, the Premises shall be sold and shall be

conveyed subject to:  ( a)    zoning and subdivision laws and regulations, provided that they are not

violated by the existing building and improvements erected on the property or their use;  ( b)    consents

for the erection of any structure on, under, or above any streets on which the Premises abut;  ( c)

encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

and  ( d)    real estate taxes that are a lien, but are not yet due and payable.

10. As of closing, the Premises need not be conveyed free of notes or notices of violations of law

or municipal ordinances, orders, or requirements noted or issued by any governmental department

having authority as to lands, housing, buildings, fire, health, environmental, and labor conditions

affecting the Premises. However, Seller shall furnish Purchaser with any authorization necessary to

make searches that could disclose these matters.

11. Seller represents and warrants to Purchaser that:  ( a)    Seller is the sole owner of the

7

13-10699-shl Doc 42 Filed 11/13/19 Entered 11/13/19 23:56:13 Main Document
13-10699 Approving Disclosure Statement and Confirming Pg 31 of 40 Contract &
Rider both dated 7-22-2013 Pg 16 of 25

Premises and has the full right, power, and authority to sell, convey, and transfer the same in accordance with the terms of this Contract; ( b) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code section 1445, as amended, and the regulations promulgated thereunder; ( c) the Premises is not affected by any exemptions or abatements of taxes; ( d) Seller has been known by no other name for the past ten years; and ( e) Seller covenants and warrants that all of the representations set forth in this Contract shall be true and correct at closing. None of Seller's covenants, representations, warranties or other obligations contained in this Contract shall survive closing.

12. Except for this Contract being subject to and conditioned upon Abatement due-diligence timing and the allocation of costs and expenses of cleanup and but for a termite inspection, Purchaser acknowledges and represents that it is fully aware of the physical condition and state of repair of the Premises and all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this Contract based solely upon such inspection and investigation and not upon any information, data, statements, or representations, written or oral, as to the physical condition, state of repair, use, cost of operation, or any other matter related to the Premises or any other property included in the sale, given or made by Seller or its

8

13-10699-scc Doc 42 Filed 11/13/19 Entered 11/13/19 23:56:11 Main Document
13-10699-scc Approving Disclosure Statement and Condition 08/28/13 01:37:32 Contract &
Rider    both dated 7-22-2013    Pg 17 of 25

representatives, and shall accept the same "as is" in their present condition and state of repair, subject

to reasonable use, wear, tear, and natural deterioration between the date hereof and the date of

closing, without any reduction in the purchase price or claim of any kind for any change of condition by

reason thereof subsequent to the date of this Contract. Purchaser and its authorized representatives

shall have the right, at reasonable times and upon reasonable written notice to Seller, to inspect the

Premises before closing.

13. "Closing" means the settlement of the obligations of Seller and Purchaser to each other

under this Contract, including the payment of the purchase price to Seller, and the delivery to

Purchaser of a "Bargain And Sale Deed With Covenants Against Grantors' Acts" in proper statutory

form for recording, duly executed and acknowledged, so as to convey to the Purchaser fee-simple title

by deed to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall

contain the covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

14. Closing shall take place at office of Purchaser's attorney, or otherwise at a place agreed

upon by the parties, on or before 210 days after written notice to Purchaser of Court approval of this

Contract.

15. This Contract and Purchaser's obligations to purchase the Premises are also subject to and

13-10699-scc Doc 42 Filed 11/13/19 Entered 11/13/19 23:51:02 Main Document
13-10699 Approving Disclosure Statement and Rider and Notification Plan 11:37:38 of Contract &
Rider    both dated 7-22-2013    Pg 18 of 25

conditioned upon the following conditions precedent: ( a )   the accuracy, as of the date of closing, of

the representations and warranties of Seller made in this Contract; ( b )   the delivery of the Premises

and the building and improvements comprising a part thereof together with keys to the building; and

( c )   the delivery by the parties of any affidavits required as a condition of recording the deed.

16. Deed recording taxes shall be paid by Seller at closing; and Seller shall cause such payment

to be delivered to the appropriate State, City, or County officer ( s )   at closing. Under U.S. bankruptcy

law as applied to this Contract, Seller is exempt from paying deed transfer taxes.

17. Adjustments and apportionments of taxes, water charges and sewer rents shall be made as

of midnight of the day before the date of closing on a thirty-day basis. Any errors or omissions in

computing apportionments or other adjustments at closing shall be corrected within a reasonable time

following closing -- and this paragraph shall survive the closing.

18. Seller shall credit Purchaser as an adjustment to the purchase price with the amount of any

unpaid taxes, assessments, water charges, vault charges, and sewer rents, together with any interest

and penalties thereon to a date not less than five business days after closing, provided that official bills

therefor computed to said date are produced at closing or are otherwise determined by the title closer

and paid through the closing.

10

19. If at closing there are any liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them by depositing sufficient monies with the title insurance company employed by Purchaser acceptable to it and required by it to assure their discharge, or otherwise paying as the Court shall direct, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure the Purchaser's institutional lender, if any, clear of such matters. Upon written notice to Purchaser, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters at closing. Upon information and belief, Seller represents that liens on the Premises total around $3,000,000.

20. Purchaser shall order an examination of title in respect of the Premises promptly after execution of this Contract (and notwithstanding that a financing commitment might not yet be obtained or accepted by Purchaser). Purchaser shall cause a copy of the title report and any additions thereto to be delivered to Seller's attorney promptly after receipt thereof.

21. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at closing showing that they are not against Seller or otherwise not extant, provided same is acceptable to Purchaser's

11

mortgage lender, if any, and the title company agrees to insure same.

22.) The contract downpayment payable to Seller's attorney, as Escrowee, to be held in

escrow shall be $250,000, and shall be paid to Escrowee within 7 days of the Court's approval of this

Contract . Escrowee shall hold the down payment for Seller's and Purchaser's account in escrow in

a trust account at any bank. Escrowee is authorized to payover from said escrow funds, as appropriate,

to third party ( ies)   for environmental abatement testing expenses and related reports. The contract

downpayment shall be in addition to the $250,000 Abatement Escrow held by Escrowee pursuant to

Par. 5.04 above. If this Contract is cancelled pursuant to its terms, other than as a result of

Purchaser's willful default, this Contract shall terminate and come to an end, and neither party shall

have any further rights, obligations or liabilities against or to the other hereunder or otherwise, and

Escrowee shall refund Purchaser's down payment deposit held by him in escrow within 7 days of

Escrowee's receipt of notice of contract termination.

23. If Purchaser willfully defaults hereunder, Seller's sole remedy shall be to receive and retain

the down payment as liquidated damages, it being agreed that Seller's damages in case of

Purchaser's willful default might be impossible to ascertain and that the down payment constitutes a

fair and reasonable amount of damages under the circumstances and is not a penalty.

12

13-10699-scc Doc 42 Filed 11/14/13 Entered 11/14/13 12:23:53 Main Document
13-10699-scc Approving Disclosure Statement and Confirming Plan Pg 36 of 40 Contract &
Rider    both dated 7-22-2013    Pg 21 of 25

24. If Seller willfully defaults hereunder, Purchaser shall have such remedies as Purchaser shall

be entitled to at law or in equity, including, but not limited to, specific performance.

25. The acceptance of the deed by Purchaser shall be deemed full compliance by Seller of all

the terms and conditions of this Contract.   None of the provisions of this Contract shall survive said

acceptance of the deed except as shall be specifically provided, in writing, to survive the closing.

26. Email with pdf-file attachments shall be the preferred method of written notice under this

Contract: The sender of an email shall follow up with a telephone call to verify receipt thereof.

.1      Any notice or other communication under this Contract shall be in writing and shall be sent by

the parties through their respective attorneys who are hereby authorized to do so on their behalf

or by the Escrowee, by registered or certified mail, postage prepaid, or by fax, email, or hand

delivery. The sender of a fax or an email shall follow up with a telephone call to verify receipt

thereof.

.2      The attorney for Seller  ( and Escrowee)   is:

Albert H. Barkey

277 Broadway, Suite 408

New York, NY 10007

Phone:    212-677-5776

Cell:       646-410-1818

Fax:       646-219-3072

Email: ahboffice@yahoo.com

13

13-10699-shbc Doc 42 Filed 11/13/19 Entered 11/13/19 23:53:11 Main Document
Approving Disclosure Statement and Confirming Plan Pg 37 of 40 Contract &
Rider both dated 7-22-2013 Pg 22 of 25

.3     The attorney for Purchaser is:

        Laurence J. Bellom

        814 Commerce Street

        Thornwood, NY 10594

        Phone:   914-769-9500

        Fax:       914-769-9549

        Email: bellom.law@verizon.net

27. This contract may not be assigned by Purchaser without the prior written consent of the Seller, which consent shall not be unreasonably withheld, delayed or conditioned.

28. Only upon and within title closing under this Contract and only from the proceeds otherwise payable by Purchaser to Seller, Seller shall pay Broker the sum of $275,000 which is a commission of five (5%) percent of the purchase price. Seller and Purchaser each represent and warrant to the other party that it has not dealt with any other broker or consultant in connection with this sale.

29. All prior understandings, agreements, representations, and warranties, oral or written, between Seller and Purchaser are merged in this Contract. This Contract completely expresses the parties full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Contract.

30. A fully executed copy of this Contract shall be deemed the original for the purposes of submitting same to the Court and that facsimile signatures shall have the same force and effect as the

14

13-10699-shl Doc 42 Filed 11/13/19 Entered 11/13/19 23:53:11 Main Document
13-10699-shl Doc 24 closed Sub28Pg3 Entered on 08/28/13 01:37:36 Contract &
Rider    both dated 7-22-2013    Pg 23 of 25

original signatures.

31. Neither this Contract nor any provision thereof may be waived, changed, or cancelled except

in writing.   This Contract shall also apply to and bind the heirs, distributees, legal representatives,

successors and permitted assigns of the respective parties. The parties hereby authorize their

respective attorneys to agree in writing to any changes in dates and time periods provided for in this

Contract.

32. This Contract shall not be binding or effective until duly executed by all parties and

thereupon delivered by Seller back to Purchaser and until Escrowee deposits Purchaser's down

payment in his escrow account.

33. Each party shall, at any time and from time to time, execute, acknowledge where appropriate

and deliver such further instruments and documents and take such other action as may be reasonably

requested by the other party in order to carry out the intent and purpose of this Contract.   This

paragraph shall survive the closing.

34. This Contract is intended for the exclusive benefit of the parties hereto and, except as

otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or

be enforceable by, any other person or entity.

15

13-10699-smb Doc 42 Filed 11/14/19 Entered 11/14/19 23:53:11 Main Document
13-10699-smb Doc 42 Filed Disclosure Sub PageGreement Confirm 08/28/13 1:37 Pg 39 of 40 Contract &
Rider    both dated 7-22-2013    Pg 24 of 25

35. The Court shall have full and continuing jurisdiction over this Contract and any disputes, issues, and matters relating thereto. But for applicable federal law, New York law shall govern this Contract.

36. In the event the title closing does not occur, then and in that event the total cost of all environmental due diligence paid by purchaser shall be a lien on the premises, and seller shall provide copies of all testing results, laboratory and environmental reports, findings etc. to purchaser.

37. The foregoing represents the entire agreement of the parties and no modification, amendment, or extension thereof shall be valid, unless in writing, signed by all signatories to this agreement, but for the continuing obligation of good faith in carrying out its terms and intentions that is hereby deemed a part of this Contract.

13-10699-shl Doc 42 Filed 11/14/19 Entered 11/14/19 13:56:11 Main Document
13-10699 Approving Disclosure Statement and Confirmation Plan Pg 40 of 40 Contract &
Rider    both dated 7-22-2013    Pg 25 of 25

In WITNESS WHEREOF, this Contract is duly executed by its parties:

2700 Jerome Ave. Realty Corp.          APT NYC DEVELOPMENT 2700 LLC

   IRS Tax ID: 13-4185756               IRS Tax ID:


By: _____     By: _____

   Carlos Abreu as President                        ,  Member



Albert H. Barkey as Escrowee          Prela Global Group, LLC    - Broker


By: _____ By: _____

   Albert H. Barkey as Escrowee              Prelja Paljusevic, Member